## BRONSON *v.* NEWBERRY.

The act abolishing imprisonment for debt, (S. L. 1839, p. 76,) operated upon the remedy to enforce contracts made before it took effect.

It did not, thus construed, *impair the obligation of contracts.*

Debt, by B against N, on a recognizance of special bail. The recognizance was entered into in the year 1837, in an action upon contract, brought by B against one *C,* wherein judgment was rendered against C, in April, 1842, upon which a *ca. sa.* was afterwards issued, and returned *non est inventus.* N moved that an *exoneretur* be entered upon the recognizance: *Held,* that the motion should be granted, for that the act abolishing imprisonment for debt, which took effect May 10, 1839, (S. L. 1839, p. 76,) operated to prohibit the arrest or imprisonment of C upon any process issued upon the judgment against him, and thereby rendered the recognizance void.

Upon the hearing of the motion, it appeared that B formerly had a claim against the United States for property destroyed during the late war with Great Britain, which claim the accounting officers of the treasury department were authorized, by an act of congress, to adjust; and that C, who was not an attorney or counsellor at law, and did not hold himself out as such, being employed for a pecuniary compensation, and duly empowered for that purpose, had acted as the attorney of B in establishing such claim, and in procuring its adjustment by, and receiving payment thereof from, the treasury department; that he afterwards refused to pay to B the amount so received; and that the action by B against C, was brought to recover it: *Held,* that such action was not "for misconduct or neglect in a professional employment," within the purview of the second section of the non-imprisonment act of 1839.

It also appeared that C was, and ever since the commencement of the action against him had been, a non-resident of this state, without property in the state out of which the money could be made to satisfy the judgment rendered against him; but that ever since the rendition of the judgment, he had had property and effects elsewhere, which he unjustly refused to apply to its payment: *Held,* that these facts did not show any forfeiture of the recognizance, or in any way affect N's liability thereon.

CASE reserved from Wayne Circuit Court. A *capias ad respondendum,* issued out of Wayne circuit court, in a suit wherein Bronson was plaintiff, and one Camp defendant, returnable at the November term, 1837, of said

court, having been returned duly served, Newberry there-upon, on the 20th day of December, in the same year and term, joined Camp in executing a recognizance of special bail, whereby they acknowledged themselves to owe unto Bronson the sum of $3080, to be levied, &c. upon condi-tion, that, if Camp should be condemned in the action at the suit of Bronson, he, the said Camp, should pay the costs and condemnation of the court, or render himself into the custody of the sheriff of the county of Wayne for the same, or, if he failed to do so, he, the said New-berry, would pay the costs and condemnation for him. June 1, 1840, Bronson recovered a judgment in the suit against Camp for $2981.36 damages, and $43.14 costs; upon which a *capias ad satisfaciendum*, directed to the sheriff of Wayne county, was issued, April 26, 1842, and returned *non est inventus*, on the 3d day of May following.

The present action was thereupon brought by Bronson against Newberry, upon the above mentioned recogni-zance of special bail, which, it was claimed, had been forfeited. It was commenced January 6, 1843, by sum-mons issued out of Wayne circuit court. A declaration had been filed, and default for want of plea entered, when Newberry moved the circuit court, upon affidavit of the above facts, for an order that an *exoneretur* be entered up-on the recognizance, claiming that it had been, in effect, rendered void, by the operation of the "act to abolish imprisonment for debt and to punish fraudulent debtors," approved April 10, 1839. (S. L. 1839, p. 76.)

Affidavits were read in opposition to the motion, for the purpose of showing that the judgment against Camp was for "misconduct and neglect in a professional employ-ment," within the purview of the second section of the non-imprisonment act, and that therefore Camp was liable to imprisonment on process issued thereon. The contents of these affidavits, and also of counter affidavits introdu-

ced on the part of Newberry, sufficiently appear in the opinion of the court.

It also appeared by affidavit in opposition to the motion, that, at the time of the commencement of the action against Camp, he was, and ever since had been, a non-resident of this state, without property in this state out of which the money could be made to satisfy the judgment recovered against him; but that, ever since the rendition of the judgment, he had had property and effects elsewhere, which he unjustly refused to apply to its payment.

The motion was reserved by the presiding judge of the circuit court, for the opinion of this court upon the questions arising thereon, and was argued at the present term.

*Geo. C. Bates,* in support of the motion.

1. The non-imprisonment act, (S. L. 1839, p. 76,) went into effect before judgment was rendered, or *ca. sa.* issued thereon, against Camp, and operated to prohibit Newberry from making any surrender, and to discharge Camp from all liability to imprisonment upon process issued upon the judgment. Newberry's liability on the recognizance could never afterwards become *fixed* by return of *ca. sa. non est.* The *ca. sa.* against Camp was issued in violation of law, and was void. §§ 1, 25. The sheriff would have been a trespasser, if, finding Camp within the county, he had taken his body upon it. 21 Wend. 670; 22 Wend. 612. The court ought, therefore, to order that an *exoneretur* be entered, as has often been done in analogous cases. 1 Caines' R. 9, n. 8; Colman's Ca. 60; 2 John. R. 101; 6 D. & E. 247, '50; 2 John. Ca. 403; 9 Wend. 462; 1 Cow. 428; Doug. 45; 4 John. R. 409; 2 B. & P. 45.

2. The abolishment of imprisonment for debt on pre-existing contracts, by the act of April 10, 1839, was not unconstitutional as impairing the obligation of contracts. 12 Wheat. 213; 9 Pet. 359; 1 How. (U. S.) R. 328, 314;

3 Story on Const. 250; 1 Kent's Com. 419; *Sturges* v. *Crowninshield*, 4 Wheat. 122; *Mason* v. *Haile*, 12 Wheat. 376.

3. It does not appear that the judgment against Camp was for misconduct or neglect in a professional employment, so as to bring the case within the exception contained in the second section of the non-imprisonment act. 17 Wend. 32; 10 Id. 581; 1 Hill, 226. On this point the affidavits in opposition to the motion are insufficient, in not showing that Camp was a *professional man*, or that the money was received by him in a *professional capacity;* 3 Hill, 44; and the counter affidavits, showing that such was not the case, are admissible. 2 John. R. 100; 5 Id. 363; 10 Wend. 602; 9 Id. 463.

*A. D. Fraser*, contra.

1. The act abolishing imprisonment for debt being, in respect to the action against Camp, as well as to the recognizance and this suit, *retrospective*, does not apply to this case. A statute will not be construed to apply retrospectively unless it is so expressly provided. 1 Ves. Sen. 225; 3 Atk. 551; 2 Ld. Raym. 1350; 4 Burr. 2460; 2 Nott & McC. 505; 8 Am. Com. Law, 150; 4 Serg. & Rawle, 401; 4 Wend. 211; 12 Id. 490; 7 John. 477; 1 Ohio R. 13; 3 Serg. & Rawle, 590, '8.

2. But if the act does apply, it is, in respect to this case, unconstitutional and void; being a violation of the obligation of the contract which was the foundation of the action against Camp. *Bronson* v. *Kinzie*, 1 How. R. 311; *McCracken* v. *Hayward*, 2 How. R. 608; Swift's Dig. 14.

3. The second section of the act excepts from the operation of the first section, actions " for misconduct or neglect in any professional employment." The affidavits in opposition to the motion show that the action against Camp was within this exception. 2 Stark. Ev. 18; *Lips-*

*combe* v. *Holmes*, 2 Camp. 441. The counter affidavits offered on this point were not admissible. Rule 24.

4. This case does not come within the purview of the act, because it appears that Camp is, and always has been, a non-resident of this state, and has property which he wrongfully and unjustly refuses to apply to the payment of the plaintiff's judgment. These facts make a case within the fourth section of the act, which would deprive Camp, if within this state, of the benefit of the first section. It cannot have been the intention of the legislature that a debtor should be entitled to the exemption from imprisonment provided by the first section in such a case, while both himself and his property remained beyond the reach of that scrutiny permitted by the act as the only security for the creditor.

RANSOM, C. J. delivered the opinion of the Court.

It is very clear that the defendant is entitled to have an *exoneretur* entered upon his recognizance, if the act abolishing imprisonment for debt, (S. L. 1839, p. 76,) operated to prohibit the imprisonment of Camp, his principal, upon any process issued upon the judgment against him. 9 Pet. 358, and cases there cited.

1. But it is contended on the part of the plaintiff, that the defendant's recognizance of bail having been acknowledged and entered into *prior* to the passage of the act, is not affected by it; the act containing no express words declaring it retrospective in its operation, and the general rule being that no statute shall be construed to apply retrospectively, unless the intention of the legislature to give it such effect clearly appears.

We recognize the rule of construction contended for by the plaintiff's counsel, but it is an equally well established principle, that, in the exposition of statutes, every part is to be considered, and the intention of the legislature to be

extracted from the whole. *United States* v. *Fisher*, 2 Cranch, 358.

The first section of the act under consideration provides, "That no person shall be arrested or imprisoned on any civil process, issuing out of any court of law, or on any execution issuing out of any court of equity, in any suit or proceeding instituted for the recovery of any money due upon any judgment or decree, founded upon contract, or due upon any contract, express or implied, or for the recovery of any damages for the non-performance of any contract."

If the language of this section be taken according to its ordinary acceptation and meaning, it must be intended to prohibit arrest or imprisonment on civil process, absolutely, in existing, as well as in future cases. The terms are clear and explicit, that no person shall be arrested, &c. Still, under the application of the rule insisted on by the defendant's counsel, and which we have assumed to be the correct one, we might well conclude that the legislature did not intend to make the law apply to pre-existing cases. Subsequent sections, however, we think necessarily exclude such a conclusion. The third and fourth sections, and those following, to and including the sixteenth, contain provisions for the arrest, imprisonment and discharge of debtors charged with fraud, in the disposition or concealment of their property, or in contracting their debts, &c. and who could not be arrested or imprisoned by the preceding provisions of the act.

The seventeenth section is as follows:—"Every person imprisoned on civil process, at the time of this act taking effect as a law, in any case where by the preceding provisions of this act, such person shall not be arrested or imprisoned may, at any time after the taking effect of this act, give the plaintiff, his agent or attorney, ten days' notice of the existence of this act, which notice the jailor

shall cause to be served, if the plaintiff, his agent or attorney, be within the county in which the defendant is imprisoned; and if not, then by publication in the nearest public newspaper; which publication shall be taken and considered to be full notice to such creditor; and unless the creditor at whose suit such person shall be imprisoned, shall, within the time aforesaid, make application and complaint to some judge of the court, or to the justice of the peace, as the case may be, in which, or before whom, such suit was brought, as specified in the third and fourth sections of this act, and upon such application being made, if a warrant is not issued, as herein provided, such imprisoned person shall be entitled to be discharged from such imprisonment; and if such warrant be granted, the same proceedings shall be had thereon, as herein after provided, and the removal of the defendant from any jail in which he may be imprisoned by any warrant in such proceedings, shall not be deemed an escape."

This section, in language too plain and positive to be misunderstood, applies the act to cases in which there is not only a pre-existing debt, but in which a judgment has been obtained, final process issued, and the debtor actually arrested and imprisoned. Can it be supposed that the legislature intended to bring within the operation of this statute, this class of cases, and exclude from its application those in which an indebtedness had only been contracted, or an obligation incurred? We think such a supposition not warrantable under the most stringent rule of interpretation that has been contended for.

But again. The last section strongly fortifies us in the view we have taken of the act. It is thus :—" The provisions of this act shall not extend to residents of a foreign power, who have contracted debts with residents of this state before this act takes effect, until the expiration of one year after the taking effect of this act." The obvious mean-

ing to be gathered from this section is, that the provisions of the act shall be extended to all persons who shall have contracted debts with our citizens before the act took effect, *except* to residents of a foreign power, and to them also, after the expiration of one year from the time of the taking effect of the act.

2. It is insisted, however, that if the act is construed to apply to this case, it impairs a right which the plaintiff had acquired prior to its enactment, and is therefore *quoad hoc*, in conflict with the provision of the constitution of the United States, which declares that "no state shall pass any law impairing the obligation of contracts."

It is contended by the plaintiff's counsel, that the cases of *Bronson* v. *Kinzie*, 1 How. R. 211, and *McCracken* v. *Hayward*, 2 How. R. 608, are directly in point, and settle, conclusively, the doctrine they maintain. It should be recollected, however, that the precise question now under discussion, did not arise in either of those cases. The first was an adjudication upon the constitutionality of the appraisal laws of Illinois, as applicable to *existing* mortgage contracts. The second, *McCracken* v. *Hayward*, applied the principles laid down in *Bronson* v. *Kinzie*, to sales upon execution.

It is admitted that the language of the court, in both cases, is sufficiently broad and comprehensive to embrace the point now in controversy. Judge *Baldwin*, in delivering the opinion of the court in *McCracken* v. *Hayward*, laid down this proposition:—"Where the contract becomes consummated, the law defines the duty and the right; compels one party to perform the thing contracted for, and gives the other a *right to enforce the performance, by the remedies then in force.*" Again, he remarks—"If any subsequent law affect to diminish the duty, or to impair the right, it necessarily bears on the obligation of the contract, in favor of *one* party, to the injury of the

other; hence, any law which, in its operation, amounts to a denial or obstruction of the rights accruing by a contract, though *professing* to act *only* on the *remedy*, is *directly obnoxious* to the prohibition of the constitution."

Now, had the question then before the court been, whether a state could abolish imprisonment for debt, upon subsisting contracts, without impairing the right of the creditor; and *not*, as it was, *solely* as to the validity of the Illinois appraisal laws, the decision unquestionably must have determined the rights of the present parties.   Such, too, must be the effect of that decision, if it be found that the remedy by imprisonment entered into and formed a part of the contract between Bronson and Camp.    The plaintiff's counsel contend that it did.    Can the position be maintained, either upon principle or authority?    If it be true that this remedy was incorporated into the contract, and constituted an essential part of it, it must necessarily go with it, and might be applied for its enforcement, wherever the party might be found.    A doctrine leading to such a result, it seems to me, is untenable. Justice *Story*, in treating of this subject, remarks, that, "Although there is a distinction between the *obligation* of a contract and a remedy upon it; yet, if there are certain remedies existing at the time when it is made, *all* of which are afterwards wholly extinguished by new laws, so that there remains no means of enforcing its obligation, and no redress; such an abolition of all remedies, operating *in presenti*, is an impairing of the obligation of such contract." "But," he continues, "every change and modification of the remedy does not involve such a consequence."   "No one will doubt that the legislature may vary the nature and extent of remedies, so always that some substantial remedy be in fact left."   "And a state legislature may discharge a party from imprisonment, upon a judgment, in a civil case of contract, without infringing the constitu-

tion; for this is but a modification of the remedy, and does not impair the obligation of the contract." 3 Story on Const. 250.

*Sturges* v. *Crowninshield*, (4 Wheat. 122,) a leading case on this and kindred subjects, is strongly in point. Chief Justice *Marshall*, in deciding the case, held this language: "To punish honest insolvency by imprisonment for life, and to make this a constitutional principle, would be an excess of inhumanity which will not readily be imputed to the illustrious patriots who framed our constitution, nor to the people who adopted it. The distinction between the obligation of a contract, and the remedy given by the legislature to enforce that obligation, has been taken at the bar, and exists in the nature of things. Without impairing the obligation of the contract, the remedy may certainly be modified, as the wisdom of the nation shall direct." "Confinement of the debtor may be a punishment for not performing his contract, or may be allowed as a means of inducing him to perform it. But the state may refuse to inflict this punishment, or may withhold this means, and leave the contract in full force. *Imprisonment* is no part of the contract, and simply to release the prisoner, does not impair its obligation."

The case of *Mason* v. *Haile*, (12 Wheat. 370,) is to the same effect. "Can it be doubted," said Judge *Thompson*, "but the legislatures of the states, so far as relates to their own process, have a right to abolish imprisonment for debt altogether, and that such law might extend to present, as well as future imprisonment? We are not aware that such a power in the states has ever been questioned. This is a measure which must be regulated by the views of policy and expediency entertained by the state legislature. Such laws act merely upon the remedy, and that in part only. They do not take away the entire remedy,

but only so far as imprisonment forms a part of such remedy."

The doctrine of both these cases is reaffirmed in *Beers* v. *Haughton*, 9 Pet. 359. The question involved in the case now before us, constituted the turning point in that case. "There is no doubt," observed Judge *Story*, in delivering the opinion of the court, "that the legislature of Ohio possessed full constitutional authority to pass laws whereby insolvent debtors should be released, or protected from arrest, or imprisonment of their persons, on any action for any debt or demand due by them. The right to imprison constitutes no part of the contract, and a discharge of the person of the party from imprisonment, does not impair the obligation of the contract, but leaves it in full force against his property and effects."

Neither of these cases were commented upon, or even referred to, by the majority of the court, or by the counsel, in *Bronson* v. *Kinzie*, or *McCracken* v. *Hayward*. They are not, therefore, overruled or modified by those cases, nor can we perceive that there is any conflict between them, if it be admitted that the remedy by imprisonment, where it exists, is not one of the elements of a contract. Judge *McLean*, in delivering a dissenting opinion in *Bronson* v. *Kinzie*, says inquiringly :—" Does any one doubt that a state legislature may abolish imprisonment for debt, as well on past as future contracts ?"  "Here," he continues, " is a modification of the remedy, which takes away a means, and often a principal means, of enforcing payment of the debt ; and yet, this is admitted by all to be a constitutional law."

Swift's Dig. vol. 1, p. 14, is cited in behalf of the plaintiff, and, it is insisted, fully sustains his position. The case of *Sturges* v. *Crowninshield*, is there referred to and commented upon, as follows :—" There is some question respecting the correctness of all the principles above laid

down. To say that the legislature has a right to modify the remedy upon a contract, as they think proper, and to withhold the means of enforcing it by imprisonment, is giving them, in effect, the power to destroy the obligation of it. I apprehend the real obligation of a contract to be, that the contracting party shall perform it, and that he shall be liable to have it enforced against him by taking his estate, or by imprisoning his body to compel him to produce it; for a contract is of little value without a legal remedy for a breach of it, and a remedy would be of little value without the power of imprisoning the body to enforce it. Of course a suspension of the execution, or an exemption of any portion of the debtor's estate from execution, &c., would be a violation of the constitution; for, it would lessen, and might defeat the remedy. So, the total abolishment of imprisonment for debt, is repugnant to the constitution; for it deprives the creditor of the most effectual means to compel the debtor to produce his property for the payment of his debts, &c. But where, by a proper proceeding, it is ascertained that the debtor has no estate, or he delivers up all his estate in payment of his debts, then, as the imprisonment of the person could have no effect to compel the production of property for the payment of the debt, the discharge of the person will not impair the obligation of the contract; for, in such case, imprisonment, instead of being a means to enforce the payment, will only be a punishment for not having property to make the payment."

It will be readily admitted, that the opinions of Judge *Swift* are entitled to the most respectful consideration, emanating as they did, from one of the most able jurists of his time in this country. But, applying the principles laid down by him, to the non-imprisonment act of this state, will it be found obnoxious to the charge of unconstitutionality? I apprehend not; for it contains pro-

visions the most ample, to compel a discovery of the debtor's effects, if he have any, and their application to the payment of his debts.

We may add, in concluding the discussion of this point, that most of the states of this union, have abolished imprisonment for debt, as well upon contracts existing at the time, as upon future ones; and we are not aware that such legislation has ever been adjudged an infringement of the constitutional provision in question.

3. But it is contended further, that the recovery against Camp, being for *misconduct* and *neglect* in a professional employment, is, by the second section of the act, expressly excepted from its operation.

That section is as follows :—" The preceding section shall not extend to proceedings as for contempt to enforce civil remedies, nor to actions for fines and penalties, or on promises to marry, or for moneys collected by any public officer, or for any misconduct or neglect in office, *or in any professional employment.*"

The facts on which the plaintiff relies to bring this case within the exceptions of the act, are stated in his affidavit as follows :—" And this deponent further says, that the said action on which the said recovery was had in favor of this deponent, against the said John G. Camp, was for misconduct and neglect in a professional employment; that this deponent, under the provisions of an act of the congress of the United States, for the relief of this deponent, approved on the 14th day of July, 1832, a copy of which is hereto annexed, employed the said John G. Camp, for a pecuniary compensation, as the attorney of this deponent, and gave him the requisite authority for that purpose, to procure and present to the treasury department of the United States, the requisite evidence to establish this deponent's claim, mentioned in said act, and procure the adjustment and allowance thereof, and obtain

Bronson *v.* Newberry.

from said treasury department, and pay over to him, this deponent, the money to which he was entitled, and which should be allowed him under and by the provisions of the said act; that the said Camp did act as the attorney of this deponent in said matter, and did, as such attorney, obtain from the said treasury department, the sum of $5340, allowed to this deponent, under and by virtue of the provisions of the said act, of which sum, the said Camp paid to this deponent only the sum of $2929.95 ; and that the residue of said money the said Camp wholly neglected and refused to pay to this deponent, and for that cause and no other, the said action was brought and prosecúted against the said Camp, and the judgment aforesaid reco-vered against him, and in favor of this deponent."

By the act of congress referred to, the proper auditing officers of the treasury department were authorized to ad-just the claim of John Bronson, for a house and store de-stroyed by the enemy in the village of Buffalo, during the late war, and pay to him, &c.

With a view to meet the allegations in the plaintiff's af-fidavit, the defendant's counsel, on the argument of the motion in the circuit court, offered to read several affida-vits to show that Camp was not, and never had been, by profession, an attorney or counsellor at law; the reading of which was objected to on the ground that they had not been filed, and copies served, agreeably to the 24th rule of the circuit court. Admitting the objection to have been well taken, it might have been obviated by an applica-tion to the circuit court, for leave to file the affidavits as of the time when the motion was made ; or, the defendant might have withdrawn his motion, and, on a renewal of it, filed and served his affidavits in conformity to the rule. We incline, therefore, to treat the affidavits as properly before us, that we may form and certify to the circuit court

an opinion upon the merits of the question presented by that court for our advice.

But, it is here urged by the plaintiff that, inasmuch as Camp assumed to act as an attorney, the defendant is estopped from denying that he acted in that capacity; and we are referred to 2 Stark. Ev. 18, and *Lipscombe* v. *Holmes*, 2 Camp. 441, in support of the position.

There is no allegation in the plaintiff's affidavit, that Camp held himself out to the plaintiff as an attorney by profession, or that he in fact was such. Nor does it appear from the affidavit, that the business about which he was employed, was of such a character that it could be performed *only* by an attorney at law. It is apparent, on the contrary, that it could have been properly done by any man of common intelligence, possessing an ordinary knowledge of business. The plaintiff does not aver that he reposed confidence in Camp, by reason of his *supposed* or *assumed* professional character.

In view of the facts before us, we are clearly of opinion that the rule established by the authorities cited, and which is doubtless the true one, is inapplicable in this case.

4. It is contended that the defendant's motion ought not to be granted, because Camp is, and always has been a non-resident of this state; and has had, ever since the rendition of the judgment, and yet has, elsewhere than in this state, property and effects which he unjustly refuses to apply to the payment of the judgment.

We have seen that the language of the first section of the non-imprisonment act is general and without qualification, " that *no person* shall be arrested or imprisoned," &c. The only restriction upon the generality of its application, is contained in the last section, which provides that it " shall not extend to residents of a foreign power who have contracted debts with residents of this state, before

the act takes effect, until the expiration of one year after the taking effect of the act." The year expired May 10, 1840, some twenty days prior to the rendition of the judgment against Camp. The mere fact, then, of Camp's non-residence, did not prevent the act from operating to discharge him from liability to imprisonment on the judgment.

I can perceive no materiality to the fact that Camp had property elsewhere than within this state which he unjustly refused to apply to the payment of the plaintiff's judgment against him. Does it tend to show a forfeiture of the defendant's recognizance of special bail? To my mind, clearly not. What was the defendant's undertaking? It was, that, if Camp was condemned in the action at the suit of the plaintiff, and failed to pay the costs and condemnation of the court, or to render himself into the custody of the sheriff of the county of Wayne, he, Newberry, would pay the costs and condemnation for him; and *not* that, if Camp had property and effects out of the state, and unjustly refused to apply the same to the payment of the judgment, he would pay, &c.

The fact last stated might well be made the foundation for proceedings against Camp, if he were within the jurisdiction of the court in which the judgment was rendered, under the provisions of the third and fourth sections of the act. But I am unable to see how it can, in any way, affect the liability of Newberry.

If it be said that the plaintiff is prevented from resorting to the remedy provided by the non-imprisonment act, for compelling a disclosure of the debtor's effects, by reason of his having gone without the jurisdiction of the court in which the judgment was rendered, and that, *therefore*, there has been a forfeiture of the defendant's recognizance, it may be well answered, that the defendant did not undertake that Camp should remain or be found here for

any such purpose; but that he should be surrendered to the custody of the sheriff, on execution issued upon the judgment obtained against him.

Suppose Camp were within the county of Wayne, and were, in fact, liable to be proceeded against, under the third and fourth sections of the act, for a fraudulent concealment of his property. Could that operate a forfeiture of the defendant's recognizance? That will not be pretended. Camp could not be taken by a *ca. sa.* on account of such fraud. In a proceeding under the sections of the act mentioned, he could be punished for such fraud by imprisonment, until he should pay or secure the debt, or surrender his property for that purpose. But, as we have just said, the defendant did not obligate himself to keep or have Camp here that he might be thus punished.

GOODWIN, J. did not participate, having formerly acted as counsel for the plaintiff in the circuit court.

*Ordered certified that the motion ought to be granted.*