———o———

JOHN BOURGETTE v. FRANK WILLIAMS ET AL.

AND

ADELBERT S. BASS v. FRANK WILLIAMS ET AL.

[Two cases.]

*Lien for labor upon shingles—Constitutional law—Impairment of obligation of contracts.*

1. Act No. 229, Laws of 1887, establishing a lien for labor and services upon *shingles*, cannot be applied to a contract for the manufacture of shingles, made before the act took effect.
2. The act of 1887 giving a lien for labor and services upon shingles covers a claim for shingle bands furnished a contractor for the manufacture of shingles.

Error to Benzie. (Aldrich, J.) Argued October 24, 1888. Decided January 11, 1889.

Proceedings to establish a lien for labor upon certain shingles. Owners of shingles bring error. Judgment affirmed as against defendant Williams, and reversed as a lien upon the shingles. The facts are stated in the opinion.

*Ramsdell & Benedict*, for appellants.

*McAlvay & Grant*, for plaintiffs.

[The positions of counsel are fully set forth in the opinion.—REPORTER.]

LONG, J. These two cases were heard as one case in the circuit court for Benzie county, and are proceedings under Act No. 229, Laws of 1887, being "An act establishing a lien for labor and services upon lumber, shingles," etc. All the proceedings for the enforcement of these liens are admitted to be regular, and according to law. It is also admitted that the labor was performed and not paid for, and that it is such work as under the law would entitle all the lienors, with one exception, to the benefit of the statute. At the hearing in the court below the court found the facts in both cases in writing, at the request of the owners of the shingles. Under the findings of fact and conclusions of law the plaintiffs in the two cases had judgment for the amount of their respective claims. The owners of the shingles come to this Court on exceptions to the findings of the trial judge, both as to the facts and the law.

The amended findings made by the court below are as follows:

"1. That the plaintiff and others whom he represents performed work and labor in and about the shingle-mill of Hall & Lincoln, in Frankfort, Mich., in manufacturing the shingles described in the writ of attachment, and that there was a balance due them for such services of $100.71; and they were employed by Frank Williams, who operated the mill. All of the work was performed in the month of September, 1887. Frank Williams was lessee of the mill.

"2. That the owners and claimants of the shingles had Mr. Palmer representing them in and about the mill every day, and knew of the work done by claimants.

"3. That only shingles marked 'Hall & Lincoln, star A,' were attached, and were the shingles of Hall & Lincoln and the Malcolm McDonald Lumber Company, and

73 MICH.—14.

they were manufactured by the claimants for the lien during the month of September, 1887; that a small percentage of the shingles manufactured were for other parties than Hall & Lincoln, but that the laborers did not know the exact percentage manufactured for each party, or have access to the books of Frank Williams, or have any other means of ascertaining these facts. The said Frank Williams stopped operations on September 26, 1887, not having paid his workmen for the month of September. During the month of September about 86 per cent. of the shingles manufactured were manufactured for Hall & Lincoln and the Malcolm McDonald Lumber Company, and about 14 per cent. of all the shingles manufactured by the said Frank Williams were manufactured for the Frankfort Lumber Company and B. K. VanRaalte.

"4. Frank Williams operated under an agreement with Hall & Lincoln, which was made sometime in the month of March, 1887, to which plaintiff was not a party. The statement of lien was filed as required by law October 3, 1887, claiming a lien on about 1,500,000 shingles, marked 'Hall & Lincoln, star A,' and the sheriff attached 893,000 of these shingles, about one-half belonging to each claimant. The agreement made with Hall & Lincoln aforesaid, in the month of March, 1887, was that Williams should manufacture Hall & Lincoln and the Malcolm McDonald Lumber Company shingles during the season of 1887 at 65 cents per thousand, to be paid for on the 15th of each month for all shingles manufactured during the previous month.

"5. The workmen represented in this suit were not paid for their work and labor in manufacturing said shingles but the owners paid Frank Williams in full for the same. Payments were to be made under the contract before mentioned on the 15th day of each month, for all shingles manufactured during the previous month.

"6. It was claimed by defendant that, inasmuch as a small percentage of shingles were manufactured in the mill in which the shingles in question were manufactured for other persons than the owners contesting in this case, the exact amount of these shingles should be ascertained; and that a lien, if any at all existed, could be enforced only against the shingles of each person or company who had shingles manufactured during the period for which

the lien was claimed, in the exact proportion to which his shingles would bear to all the shingles manufactured during the period in question. I think this position is untenable for two reasons:

"*a*—It is not exact, nor precise. The same number of shingles is not always manufactured in a given time. It is not reasonable to say or to assume that each person worked upon every thousand of shingles that was manufactured during the month of September.

"*b*—Any such construction of the statute would, in nearly all cases, to a great extent destroy the remedy given by this law, and in many cases would render the provisions of the statute entirely useless.

"It is also claimed on the part of the persons claiming title to the shingles that, inasmuch as the contract between the shingle owners and Frank Williams was made in March, 1887, previous to the time when the lien law (Act No. 229, Laws of 1887) in reference to shingles became of force, the obligation and liability of shingle owners would not be affected by said law, which dates June 24, 1887. Said attorneys for the shingle owners claimed before me that any construction of the aforesaid act of the Legislature which rendered the shingles liable for the labor of the men was in conflict with Article 4, § 43, of the Constitution of Michigan, which provides that the Legislature shall pass no law impairing the obligation of contracts, and that it would also conflict with Article 1, § 10, cl. 1, of the Constitution of the United States, and that part thereof which provides that no state shall pass any law impairing the obligation of contracts.

"In what way does this law conflict with the constitutional rights of the owners of the shingles by impairing the obligation of a contract? The only way that I can conceive that it would affect this matter in the least would be in a case where a contract was made for the manufacture of shingles, etc., for a less sum than would be required to pay the men. But this is too vague a supposition upon which to base any claim of legal right, and there is no proof that such is the case in this suit. The law simply gives the laborer an additional remedy, and leaves the contracting parties and the contract in the same position that they would occupy towards each other were it not for this law. In this case the proceedings to enforce the lien were commenced about two weeks before

the time for payment of the money for the September cut to Williams, by Hall & Lincoln and the Malcolm McDonald Lumber Company, under their contract, and I think there is no doubt that the payment of the men would operate as payment to Williams on the said contract, without in any way impairing the obligation of the same or changing its terms."

Counsel for the owners of the shingles assign the following errors:

"1. The court erred in holding that Act No. 229, Laws of 1887, created a lien on the shingles which were manufactured and paid for in accordance with a contract made in March, 1887, so as to impose upon the owners of the shingles the obligation to pay, in addition to the contract price paid to Frank Williams, the wages of the men who labored for Frank Williams.

"2. The court erred in holding that a construction of said Act No. 229, Laws of 1887, which imposes upon the owners of the shingles the obligation to pay the workmen, in a case where the shingles were contracted to be manufactured before the passage of said act, was not in conflict with Article 4, § 43, of the Constitution of Michigan, and that clause thereof which provides that 'the Legislature shall pass no law impairing the obligation of contracts.'

"3. The court erred in holding that a construction of said Act No. 229, Laws of 1887, which imposes upon the owners of the shingles the obligation to pay the workmen in a case where the shingles were contracted to be manufactured before the passage of the act, was not in conflict with Article 1, § 10, cl. 1, of the Constitution of the United States, and that part thereof which provides that 'no state shall pass any law impairing the obligation of contracts.'

"4. The court erred in holding that the shingles of the appellants were liable for the services of the men employed by Frank Williams, and rendered in manufacturing shingles for the Frankfort Lumber Company and B. K. VanRaalte.

"5. The court erred in the following findings of law: That there is due plaintiff the sum of $100.71 from Frank Williams [in the Bourgette case, and $830 due the plaintiff in the Bass case]; that the same is due for

work and labor performed by said plaintiff and the claimants he represented, mentioned in his declaration, in manufacturing the shingles seized under attachment in this suit, being the shingles claimed and bonded by Hall & Lincoln and the Malcolm McDonald Lumber Company, and that the said James Bourgette [and Adelbert S. Bass] have a lien upon said described property for said amount. That the court was in error in directing judgment against Frank Williams and said shingles."

Error is also claimed here, in the court holding that the claim of Henry M. Smith could be included in the amount of the judgments rendered against the shingles. It appears that Henry M. Smith furnished Williams the shingle bands for all shingles manufactured, and his claim was included in the liens filed and sought to be enforced, to the amount of $98.25. We have no doubt that it was proper to include this item for shingle bands. The shingles were not complete until put up in bunches ready for shipment. Section 1 of the act provides—

"That any person or persons who perform any labor or services in manufacturing lumber or shingles, * * * shall have a lien thereon. * * * The word 'person' or 'persons' shall be interpreted to include cooks, blacksmiths, artisans, and all others usually employed in performing such labor and services."

This claim was properly included.

A more serious difficulty, however, arises under the second objection of counsel for the shingle owners. The contract between the owners and Williams was entered into in March, 1887, by the terms of which Williams was to have the use of the mill, and do all the work of sawing these shingles, and pay the men, and all other expenses incident thereto, and in consideration for which the owners were to pay him sixty-five cents per thousand for all shingles sawed, payments to be made on the 15th of each month for the previous month's sawing. At the

time this contract was made the statute did not give
laborers a lien upon the shingles for their wages, and
the owners were not legally concerned whether Williams.
kept his payments up with his workmen.   They kept and
performed their contract with Williams by the payment,.
on the 15th of each month, of the 65 cents per thousand
for all shingles sawed the previous month; and, if Wil-
liams failed to make full payment to his men for their
labor on the shingles, or failed to pay them any part of
it, the laborers had no right to look to the product of
their labor for such payment.

While it is true that the value of the shingles consisted
largely of the labor expended by the men in Williams'
employ, yet they were the property of the owners, and
not of Williams; and the owners, upon the payment of
65 cents per thousand to Williams, took them freed from
any liability to be seized for labor expended thereon.
This was the state of the law at the time of making the·
contract.   The law in force at the time of making the
contract enters into it and becomes a part of it.   The
contract, therefore, consists both of the words and writ-
ing of the parties, and, mingled therewith, all relevant
provisions of law under which it was made; and if any
obligation which the mingled contract imposes on either
party is attempted to be augmented, diminished, or·
changed by a later statute, to the detriment of either,
the enactment will be ineffectual for the purpose.

The obligation of a contract is said to consist in its
binding force on the party who makes it.   This depends.
upon the law in existence when it was made.   These laws.
are necessarily referred to in all contracts, and form a
part of them, as the measure of the obligation to per-
form them by one party and the right acquired by the
other; and if any subsequent law affects to diminish the
duty or to impair the right, it necessarily bears upon the·

obligation of the contract, in favor of one party to the injury of the other. Bish. Cont. § 567; Cooley, Const. Lim. 288.

It is true that whatever belongs to the remedy merely may be altered according to the will of the Legislature, provided the alteration does not impair the obligation of the contract; and it does not impair it, provided it leaves the parties to a substantial remedy, according to the course of justice as it existed at the time the contract was made. *Mundy v. Monroe*, 1 Mich. 68; *Bronson v. Newberry*, 2 Doug. 38; *Crippen v. Morrison*, 13 Mich. 23.

The statute under consideration took effect in June, 1887, some three months after the contract for the sawing was made. It is now claimed that though the law did not give the laborers this lien at the time the contract was entered into, yet the work claimed for having all been performed during the month of September, 1887, and after this statute came in force, it was the duty of the owners to refuse payment to Williams, under the contract, until the payment was secured to the men, and, failing in this, the laborers might have their lien upon the shingles under this statute, though passed subsequent to the making of the contract. If the law had been in force at the time the contract was made, there can be no doubt that the contract would be construed as coming within its provisions; and it would have been the duty of the owners to see that these men were paid, in order to protect their property from the lien which the statute gives. It cannot, however, be said that the owners would have entered into this contract with Williams if this statute had been in force. It affects the rights of the owners in their contract relations with Williams. It does something more than affect the remedy which either party might have upon failure to perform. It deprives the owners of valuable rights. As the law was at the time

the contract was made, the owners, upon payment of the 65 cents per thousand to Williams, had the right to remove the product, or dispose of it as they deemed best. No one had a lien upon it, or any rights in it. It could not be held for any debt of the contractor. It was the absolute property of the owners, freed from all claim that Williams or the laborers might have. Applying the statute coming in force in June, a burden was at once cast upon the owners, which they did not assume when the contract was made,—that is, to refuse payment to Williams until they had gone among the men and inquired of each and every one of them if their labor had entered into the shingles, and, if so, whether they had each been paid; or to have kept a strict account of each laborer's time, and the work done, and then to see that each was paid before making payments to Williams, or to pay to Williams at the peril of having the shingles seized and held under the lien which the statute gives. We are satisfied that this statute cannot be applied to a contract made before the statute took effect. It impairs the obligation of the contract, and comes plainly within the inhibition of the Constitution.

The proceeding, however, is not only against the property, for the enforcement of the lien, but also against the contractor. The amount found by the court below to be due the claimant in the Bass case is $830, and in the Bourgette case $100.71.

The judgments must be affirmed as against Frank Williams, the contractor. For the reasons above given the shingles cannot be held under the lien claimed, and the proceedings for the enforcement of the lien must be quashed and held void, and the property released to the owners.

We need not discuss the other questions raised. The owners will recover costs of both courts in each case

against the claimants.. Frank Williams did not appeal, hence no costs will be given against him in this Court. Plaintiffs will recover their costs against Williams in the court below, in each case.

The other Justices concurred.