## THE ANDREWS & JOHNSON COMPANY

### *v.*

### FREDERICK M. ATWOOD *et al.*

*Filed at Ottawa June 8, 1897.*

1. CONTRACTS—*law in force at execution of contract becomes a part thereof.* The law in force at the time a contract is executed enters into and forms a part of the contract.

2. MECHANICS' LIENS—*act of 1895 does not apply to contracts previously entered into.* The Mechanic's Lien act of 1895 (Laws of 1895, p. 224,) does not govern mechanic's lien cases arising out of contracts entered into prior to its passage, where the provisions of the act affect the substantial then existing rights of the parties.

3. SAME—*sub-sub-contractor cannot enforce lien under old law.* Under the law as it existed prior to the passage of the Mechanic's Lien act of 1895, one holding a contract to do work or furnish materials under a sub-contractor cannot maintain a bill or petition against a property owner to enforce a mechanic's lien.

*Andrews & Johnson Co.* v. *Atwood,* 67 Ill. App. 303, affirmed.

APPEAL from the Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. M. F. TULEY, Judge, presiding.

CARLOS S. ANDREWS, for appellant:

Parties have no vested rights in a remedy provided by law, and a law which affects the remedy, merely, will accordingly govern the enforcement of a contract made before its passage. A mechanic's lien being a remedy, merely, the legislature may properly create or abolish it as affects existing contracts, and by so doing it does not impair the obligation of such contracts. *Sullivan* v. *Brewster*, 1 E. D. Smith, 681; *Miller* v. *Moore*, id. 739.

The terms upon and the manner in which mechanics' liens shall be given and enforced are governed by the laws in force when the benefit of the lien which the law gives is sought. *Barton* v. *Steinmetz*, 37 Ill. App. 142; *Williams* v. *Waldo*, 3 Scam. 264; *Templeton* v. *Horne*, 82 Ill. 491.

The law in force when the contract is performed is the law which determines the existence or non-existence of the lien. The lien is first created as the work under the contract is performed *Williams* v. *Chapman*, 17 Ill. 423.

It is not the contract which creates the lien under the statute, but it is the use of the materials furnished upon the premises,—the putting them into the building and attaching them to the freehold,—which entitles the party furnishing the materials to a lien upon the premises to the extent of their value. *Gaty* v. *Casey*, 15 Ill. 189.

MARSTON, AUGUR & TUTTLE, for appellees:

A statute will not be given a retroactive effect, unless the intention of the legislature to make it so is clearly stated or such intention arises by necessary implication. Cooley's Const. Lim. 454; *In re Tuller*, 79 Ill. 106; *People* v. *Thatcher*, 95 id. 109; Sedgwick on Construction of Stat. Law, (2d ed.) 162, 164.

The Mechanic's Lien law of 1895 is not purely remedial, but also imposes new duties on owners and affects their property rights. Its application in this case would make it obnoxious to the constitutional provisions prohibiting the impairing of obligations of contracts. Const.

sec. 14, art. 2; *Kinney* v. *Sherman*, 28 Ill. 520; *Bourgette* v. *Williams*, 73 Mich. 208; *Fahnstock* v. *Wilson*, 95 Pa. St. 303; *Cappelle* v. *Baker*, 3 Houst. 364; *Donahy* v. *Clapp*, 12 Cush. 440; Cooley's Const. Lim. 344.

The rights given under the Mechanic's Lien law in Illinois are based upon a contractual relation, and, however remote, can arise only under and pursuant to the terms of the original contract and sub-contracts made and entered into in accordance with the provisions of the act. *Sutherland* v. *Ryerson*, 24 Ill. 520; *Kinney* v. *Sherman*, 28 id. 520; *Wendt* v. *Martin*, 89 id. 139.

Mr. JUSTICE CRAIG delivered the opinion of the court:

This was a petition by a sub-sub-contractor to enforce a mechanic's lien for labor and material in placing in a certain building certain ventilating and heating apparatus. Frederick M. Atwood, who owned a leasehold interest in a certain lot situated on the north-west corner of Madison and Clark streets, in Chicago, on the 27th day of May, 1895, entered into a contract in writing with the George A. Fuller Company for the erection of a large building on the said lot, for which he was to pay the contractor the sum of $238,000. The entire building was to be completed for that sum, under the supervision of Holabird & Roche, architects. The George A. Fuller Company sub-let the steam heating and radiation of the building to the Charles H. Simmons Company, by a written contract dated June 10, 1895. The Charles H. Simmons Company sub-let to the Andrews & Johnson Company, the complainant, the contract for the ventilation and shafting required under its contract. This contract was executed on July 22, 1895. Atwood, the owner of the premises, made no contract in regard to the erection of the building with any person except the George A. Fuller Company, and the only contract of sub-letting executed by the George A. Fuller Company was the contract with the Charles H. Simmons Company.

The Mechanic's Lien act of 1895 was passed on June 26, 1895, and by its terms went into effect at once, and the right of the complainant, a sub-sub-contractor, to a lien on the premises is predicated upon the provisions of that act.

It is conceded that under the law as it existed prior to the passage of the act of June 26, 1895, a sub-sub-contractor could not maintain a bill or petition to enforce a lien, but the appellant contends that under the act of 1895 that right has been conferred. The act is entitled "An act to revise the law in relation to mechanic's liens," and contains forty-one sections. Section 40 repeals former laws in regard to liens, with this provision: "*Provided,* that this section shall not be so construed as to affect any rights existing or actions pending at the time this act shall take effect." Under this section, as to all rights existing or actions pending the old law was left in force. As will be observed, Atwood made his contract for the erection of his building with the George A. Fuller Company on May 27, 1895, and it is a familiar rule that the law in force at the time a contract is executed enters into and forms a part of the contract. Under the contract and the law as it existed on the 27th day of May, 1895, were there existing rights on behalf of Atwood or the George A. Fuller Company in regard to the erection of the building? If there were, their rights were not affected by the new act, but were left to be settled and determined by the old law.

Under the contract between Atwood and the Fuller Company as the law existed when it was executed and became binding on the respective parties, Atwood became bound to pay the Fuller Company the several amounts provided in the contract, unless that company had allowed indebtedness to accrue for labor or materials furnished to it for the building, which might become liens under the law as it existed June 26, 1895. Atwood, to protect himself, was then only required to take sworn

statements from the Fuller Company of such persons as had sub-contracts with it, and the Fuller Company was entitled to receive the amount due by the contract, provided it had paid its sub-contractors, disregarding the fact entirely whether its sub-contractors had paid their sub-contractors or not. But the law of 1895 conferred new rights upon sub-sub-contractors,—rights which had never before existed under the laws of this State. They were given a right to a lien, and new obligations were imposed upon the owner of the premises and upon the original contractors. Section 5 of the act (Laws of 1895, p. 228,) provides: "Within ten days after the contract is made, and before commencing work thereunder, it shall be the duty of the contractor to give the owner, and also the duty of the owner to require of him, a statement in writing, under oath, * * * of all parties having sub-contracts for specific portions of the work or for materials," etc. It also (sec. 23) provides: "The party furnishing material to or performing any labor for such sub-contractor shall have a lien therefor, * * * and may enforce his lien in the same manner as is herein provided for the enforcement of liens by sub-contractors." Section 33 provides: "No payments to the contractor or to his order shall be regarded as rightfully made, as against a sub-contractor or party furnishing materials, if made by the owner without exercising or enforcing the rights and powers conferred upon him in sections 5 and 23 of this act."

From the foregoing it is apparent that under the contract between Atwood and the Fuller Company, when it was executed, the Fuller Company could enforce payment against Atwood, provided only that it had paid its sub-contractors, while under the new act, when the Fuller Company sought payment it could not enforce the right unless all sub-sub-contractors and parties furnishing material had been paid. Moreover, under the contract executed under the old law, Atwood, in making payments

to the Fuller Company, in order to protect himself was only required to see that the sub-contractors of the Fuller Company had been paid, while under the new act, in order to protect himself, he was bound to see that all sub-subcontractors and material-men had been paid. The new act confers upon claimants rights heretofore unknown to the law, and at the same time it subjects the property of the owner to new liabilities. But if the construction contended for should be given the act of 1895, and it should be held to govern contracts entered into before the act was passed, it would be an act impairing the obligation of contracts, and would clearly fall within the inhibition of the constitution. Under the contract as executed on May 27, 1895, the George A. Fuller Company and its sub-contractor, the Charles H. Simmons Company, were entitled to enforce a lien on the premises of Atwood for labor and material furnished under contract in the erection of Atwood's building, but no other contractors or material-men had any lien whatever. But under the new statute, if it governs this case, not only the Fuller Company and the sub-contractor, the Simmons Company, have liens that may be enforced, but sub-sub-contractors may also come in and enforce liens on the property. Thus the contract of Atwood, by the force of a statute, is changed, and new obligations imposed upon him and his property in favor of others who were strangers to him. The obligation of contracts is too sacred to allow this to be done.

The cases of *Donahy* v. *Clapp*, 12 Cush. 440, and *Fahnstock* v. *Wilson*, 95 Pa. St. 303, are in point. *Bourgette* v. *Williams*, 73 Mich. 208, is also a case where a similar question arose. In the decision of the case it is said: "Applying the statute coming in force in June, a burden was at once cast upon the owners which they did not assume when the contract was made,—that is, to refuse payment to Williams until they had gone among the men and inquired of each and every one of them if their labor had entered

into the shingles, and if so, whether they had been paid; or to have kept a strict account of each laborer's time and the work done, and then to see that each was paid upon making payment to Williams, or to pay to Williams at the peril of having the shingles seized and held under the lien which the statute gives. We are satisfied this statute cannot be applied to a contract made before the statute took effect. It impairs the obligation of the contract, and comes plainly within the inhibition of the constitution." The same principle was announced by this court in *Kinney* v. *Sherman*, 28 Ill. 520.

It has been suggested the change in the statute was a mere change in remedy, in which appellee had no vested interest. We do not concur in that view. The change in the law, as said before, if applied to the contract in question, affected the substantial rights of the parties.

We do not think that appellant was entitled to a lien. The judgment of the Appellate Court will therefore be affirmed.

*Judgment affirmed.*