## John R. Smith *et al.*

### *v.*

## Thomas B. Bryan.

I. General Banking Law — *how altered.* The General Banking Law of 1851, can be changed by the Legislature, without submitting the law making the change, to a vote of the people.

2. Remedial Laws — *not affecting obligation of contracts.* The act of 1861 has for its object, a more speedy remedy to a creditor of a bank, and is not liable to any constitutional objection because it was not submitted to the people.

3. This law does not affect the obligation of the contract with the stockholders of the bank, neither increasing nor diminishing it.

4. All citizens are subject to such changes in the remedy provided for the redress of grievances as the legislature may prescribe, so that they do not impair the obligation of contracts.

WRIT OF ERROR to the Circuit Court of McLean county; Hon. JOHN M. SCOTT, Judge, presiding.

In July, 1856, the Lafayette Bank in McLean county was incorporated and went into operation under the general laws, and in July, 1861, was put into liquidation.

The defendant in error, at the March term, 1863, of the McLean circuit court, obtained a judgment against this bank, in an action of assumpsit, for one hundred and thirty-one $\frac{48}{100}$ dollars, and on the twenty-sixth day of August thereafter, sued out a *scire facias* against the plaintiffs in error, as stockholders in that bank, to show cause why judgment should not be rendered against them.

The defendants appeared and pleaded separately these pleas: 1. That neither of them was, at any time, a stockholder in the Lafayette Bank, on which issue was taken. 2. That the bank was put in liquidation by the creditors of State in 1861, and a receiver duly appointed, into whose possession all the assets of the bank have passed. 3. Same facts with the averment that the assets in the hands of the auditor and receiver, are sufficient to pay and satisfy all the debts and demands against the bank. 4. Plea as above with the further averment that no *fi fa* has been issued against the bank, and returned unsatisfied in whole or in part. 5. Plea as above, with the averment that the bank has not been wound up by the auditor and receiver.

A demurrer was interposed to these special pleas and sustained, and the plaintiffs in error made parties to the judgment against the bank.

The only question made here is sustaining this demurrer, for the reason that the act of February 14, 1861, is unconstitutional, or, if constitutional, it can only apply to banks incorporated since its passage.

Mr. R. E. WILLIAMS for the plaintiffs in error, made the following points:

The only error assigned in this case is in sustaining the demurrer to the pleas to the *scire facias*.

This bank, as appears by the pleas, was chartered in 1856, under the general banking law of this State; and this proceeding, by *scire facias*, to make the stockholders parties to the judgment previously obtained against the bank, is under the law of February 14th, 1861.

And the points made are:

1st. This amendatory act of February 14th, 1861, is unconstitutional.

2d. Even if it is constitutional, it can only apply to banks chartered after its passage.

It is clear, that under the general banking law of 1851, these pleas make a perfect defense to the action, as by the 38th section of that act, Purple's Stat. Vol. 1, 206, the liability of the stockholders cannot be enforced until after the rights, credits, assets, and effects of the bank, put into liquidation, shall have been exhausted in the payment of liabilities and the redemption of notes.

After this has been done, then the creditors of the bank shall have remedy against the stockholders, &c.

I. The amendment of 1861, to the general banking law, is unconstitutional, because it was not submitted to a vote of the people. (Constitution, art. 10, § 5.) The extent to which the legislature may, without submitting their action to a vote of the people amend the general banking law, is as I conceive, still an open question in this court. In the *Bank of the Republic* v. *The County of Hamilton*, 21 Ill., 53, the court decides that the act of 1857, altering the manner in which banks should be assessed, is constitutional, but bases the decision mainly upon the ground that the taxing power being necessary to the existence of all government, and being placed by the constitution itself solely under the control of the legislature, cannot be tied up, by one legislature, beyond the control of another,

and in any given instance, no such intention on the part of the legislature is to be inferred unless the case is too clear for argument. For instance, where the legislature should use negative words in creating a charter, and say the property of the corporation should be assessed in one way and not in any other. Then the act might be construed as a contract between the State and the corporation, and would not be liable to a change by the legislature. This case can be well sustained upon the ground that the constitution itself places the taxing power exclusively within the control of the legislature. (Constitution, art. 9, sec. 2.) And in *Reapers' Bank* v. *Willard* 21, Ill. 453. The Chief Justice in adopting as the opinion of the court, the opinion delivered by the Superior Court of Chicago, says expressly that they are not to be understood as extending the right of the legislature to amend the banking law beyond the rule laid down in the case of the *Bank of the Republic* v. *Hamilton County*. Both of the amendments passed upon by this court in the cases above referred to are very slight amendments, not in any way materially affecting the law. The first one, in regard to the method of assessment, the legislature had a clear right to make without asking the people for their concurrence by vote, as by the constitution itself, the legislature has exclusive right over this subject; and the other one, passed upon in *Peoples' Bank* v. *Willard*, the court says did not in fact alter the law at all, for without the amendment, the bank was obliged to redeem the bills presented at a sum in gross. So that, as I conceive, the question of the extent of legislative power over the banking law without submitting their action to the approval of the people is yet an open question. What is the character of the amendment of February, 1861, under which the *scire facias* in this case was sued out? It is a radical change in the whole frame of the act. (Public Laws of 1861, p. 39.) It is in effect an entirely new law. Without going over its details, it will be found that it takes up almost the entire subject and remodels it. The question in this connection is not one of the wisdom or propriety of the amendatory act, but one of the power of the legislature to pass it in this form.

It seems to me that so radical a change in the law as is effected by this amendment, can only be sustained upon the theory that the constitution only intended in the first place to submit to the people the question of whether there should be banks at all in this State, and after they had decided by a vote in the affirmative, that then they were divested of all further power in the premises, and the character of the law left solely in the discretion of the legislature. I cannot think that this is a sound view of the case, or a fair interpretation of the language or spirit of this clause of the constitution. The language of the constitution is peculiar. It says, art. 10, § 5: "No act of the general assembly, authorizing corporations or associations with banking powers, shall go into effect, or in any manner be in force, unless the same shall be submitted to the people," &c.

It seems clear, then, that by the people adopting one act, they did not lose their right to pass upon another; because, if so, after one had been adopted by the people, it might be wholly repealed and a subsequent one passed by the legislature, of an entirely different character. I apprehend it will hardly be contended by any one, that this could be done without a direct violation of both the letter and spirit of the constitution. And if it be admitted that they cannot pass an entirely new law, where is the limit? Can they repeal all but the title, and by an amendment engraft upon the said title an entirely new act? I think not, and if not, where is the stopping point? It seems to me that the spirit and letter of the constitution will both be better observed by saying that it is intended by the constitution that the people shall pass, by a vote, upon all banking laws, and if this construction be sound, this entire amendment must fall, for want of power in the legislature to pass it in the form they have attempted to do, as it is obviously a radical change in the law.

II. Even if the amendment of 1861 is valid as to banks chartered after its passage, it cannot affect a bank in existence at the time of its passage, because it violates the contract between the State and the corporation. *Dartmouth College* v. *Woodward*, 4 Wheat. 518.

It is provided by the constitution that the stockholders shall be liable to the amount of their stock, &c., leaving it to the legislature to fix that liability, only that it shall be to the amount of the stock. The legislature in the act of 1851 fixed this liability. This liability, although it may probably be said to attach upon the creation of the debt of the bank, yet the stockholders could not be called upon to pay until the assets of the corporation were exhausted. Did not this amount to a contract between the State and the stockholders, that they should not be called upon to pay until the assets of the bank were exhausted? I think it did. This was a substantial provision in this law, which became a part of the charter of each bank, and is certainly a benefit to the stockholders, and was so intended, and cannot be repealed or the liability increased by the legislature. This cannot be considered a mere regulation simply affecting the remedy, but it imposes a very onerous obligation upon the stockholders, that did not before exist, the liability to pay at once the debt upon its creation. To place it in the strongest light, the liability of the stockholders, under the old law, was only collateral to that of the corporation, they were only bound for ultimate payment, after all remedies against the corporation would be unavailing. Their liability was in the nature of guaranty or surety, and not to be enforced until all remedy against the principal would be unavailing. It is more analogous to the liability of an indorser under our statute. And will any one pretend that it would not be an alteration of the contract of an indorser to make him liable in the first instance although the maker might be abundantly solvent? It is just as much a violation of the contract with the stockholder to make him liable to pay before the assets of the corporation are exhausted. This right of the stockholders not to be called on to pay until the assets of the corporation are exhausted, is a real and substantial right, and was guarantied to these stockholders by the act of incorporation, that is, by the general law in existence at the time of the incorporation, and it is not competent for the legislature to alter or take away this right; it was a vested right, and beyond

24 — 34TH ILL.

the control of the legislature. As well might the legislature say to an indorser, whose contract of indorsement was fixed by the existing law at the time the indorsement was made, that "we will alter this contract between you and the indorsee, and you shall be liable in the first instance." It seems to me that no right could be more substantial or clearly vested than the right of these stockholders not to be called on for payment until the assets of the corporation are exhausted. Then, although the court may think that the amendment of 1861 is constitutional as to banks chartered after its passage, it cannot apply to this bank, which had been in existence years before its passage.

. The pleas state that the assets in the hands of the auditor and receiver were abundantly sufficient to pay all the indebtedness of the bank, and were a bar to the suit on the *scire facias*, and it was clearly error to sustain the demurrer to the pleas, and the case should be reversed and remanded.

Messrs. TIPTON and BENJAMIN for the defendant in error, in reply:

1st. The 4th section of the 6th article of the act of 1861, amending the banking law of 1851, is constitutional, although it was not submitted to a vote of the people.

While the federal government is one of delegated powers, supreme to the extent of the power granted, that of the State is rather to be regarded as a limitation of the legislative department; and it is competent for the legislature to exercise all powers not forbidden by the constitution of the State, nor delegated to the general government, nor prohibited to the State by the constitution of the United States. *Sawyer* v. *City of Alton*, 3 Scam. 130; *Mason* v. *Wait*, 4 id. 134; *Prettyman* v. *Supervisors*, 19 Ill. 411. The determining of a question involving the inquiry whether an exercise of power by the legislative department of the State is constitutional, is not only a matter of delicacy, but of grave import, and demands the most deliberate and mature consideration. It should not, moreover, be decided but in cases of clear necessity, and where the act alone

Smith et al. *v.* Bryan.

is in plain conflict with the constitution. *Lane* v. *Dorman*, 3 Scam. 240; *Prettyman* v. *Supervisors*. These are the true rules by which to test the validity of the exercise of the legislative power of a State.

It is contended that the amendment of 1861 violates the 5th section of the 10th acticle of our State constitution, which provides that "no act of the general assembly *authorizing* corporations or associations with banking powers shall go into effect, or in any manner be in force, unless the same shall be submitted to the people," etc. From the terms used in the provision, or from plain and necessary implication, does it appear that the framers of that instrument intended to prevent the legislature from amending a banking law which has received the sanction of the popular vote?—that the people should retain in their own hands a portion of the legislative authority, and be a branch of the legislature upon this subject? The language, in terms, does not express this. The *authorizing* of banking corporations alone is mentioned; the *regulating* of such corporations is not named. It is a familiar rule of construction, that the express mention of one thing implies the intention to exclude others. *Prettyman* v. *Supervisors*. It is no more than reasonable to suppose, that, if the framers of the constitution intended to embrace the regulating of banking corporations in this prohibition, they would have named it, and the section would have read as follows: "No act of the general assembly, authorizing *or regulating* corporations or associations with banking powers," etc. It is further contended that this amendment is in violation of the *spirit* of the constitution. In answer to this it may be said that not a single decision can be found holding a legislative enactment void because it authorized the performance of an act supposed to be embraced within the *reason* of some other prohibition. *Prettyman* v. *Supervisors*.

In the case of the *Bank of the Republic* v. *County of Hamilton*, this court decided that some of the provisions of the banking law of 1851, which was submitted to the people, are subject to legislative interference and control, and the court there laid down the rule that any provision in that law which

might have been enacted by the general assembly alone, is still subject to legislative control, without reference to a vote of the people. 21 Ill. 62. We maintain that the constitution did not require that the mode of enforcing the liabilities of stockholders in banking corporations should be submitted to the people, and that its submission to them was a work of supererogation. Had the banking law been silent as to the remedy against stockholders, and the same provision inserted in another law, it would have been as validly passed as it was after the vote in its favor. That vote gave to this clause no additional sanction. The constitution provides that the stockholders shall be individually liable to the amount of their stock. Art. 10, § 4. It is the duty of the legislature to carry out this provision by providing an appropriate remedy. Upon this subject they have complete jurisdiction to legislate independently of the popular vote, and such vote in approval of laws which might take effect without it, could not place the law beyond or above the jurisdiction of the general assembly. The general assembly being not only authorized but required to make appropriate provisions to carry out the 4th section of the 10th article of the constitution, it follows by the rule laid down by this court that the amendment of 1861 is constitutional.

2d. The amendment of 1861 applies to banks in existence at the time of its passage and does not violate any contract, but simply changes a remedy.

There cannot be found any authority which makes a banking corporation *imperium in imperio* and independent of and above the legislature of the State, so that it can claim a vested right in the mode of enforcing an obligation it has assumed. Rights and obligations are sacred in the eye of the law, and are to be preserved and enforced, but the mode and manner is always subject to legislative control. It is not unusual for a legislature, at a single session, to change the whole remedial system of the State, but no one ever dreamed that those who made contracts under the old system acquired a vested right to the old remedies. Under our constitution every individual and corporation in the State is subject to the control of the

legislature, so far as it relates to the mode of enforcing obligations, of whatever character or description they may be. The distinction between a vested right, or the obligation of a contract, and the remedy given by law to enforce the right or obligation, has been uniformly recognized by the courts. *Reapers' Bank* v. *Willard*, 24 Ill. 437–8; *Wood* v. *Child*, 20 id. 211–2.

In the case of *Sturgis* v. *Crowninshield*, the Supreme Court of the United States decided that it is competent for a legislature to pass limitation laws in relation to contracts then existing, and that it could abolish imprisonment for debt, depriving a creditor of the power of imprisoning his debtor on a case where he had the power when the contract was made. 4 Wheat. 122. As the act of incorporation of a woolen manufacturing corporation in Maine, was passed in 1833, it was contended, that it was not competent for the legislature afterwards to enact that the individual stockholders in it should be made liable for its debt. But it was held that the legislature had the constitutional power, as by the statute of 1839, to make the stockholders of a corporation personally liable *to the amount of their stock* for the debts of the corporation, contracted while they were stockholders, after the last act went into operation. *Stanley* v. *Stanley*, 26 Me. 191. In *Coffin* v. *Rich*, it was held that the repeal of a statute, making stockholders personally liable for debts of the corporation, is not a law impairing the obligation of contracts, even as to debts contracted before the repeal. 45 Me. 507.

The indebtedness upon which this action was brought in the court below occurred June 22, 1861, after the passage of the act in controversy.

But it is further contended that the liability of a stockholder is analogous to that of an indorser. The constitution, however, which forms a part of the charter of every bank in the State, declares that the stockholders shall be individually responsible to the amount of their stock. Art. 10, sec. 4. Unincorporated joint stock companies are mere partnerships, as to every person except their own stockholders, and the stockholders are pri-

marily liable for every debt of the company. *Williams* v. *Bank of Michigan*, 7·Wend. 542. The effect of the constitution is to preserve this original primary liability of the stockholders in banking associations, to the extent of their stock, notwithstanding the incorporation of such associations. Under the constitution, therefore, the stockholders in a bank are the principal debtors, and not sureties or indorsers for the corporation. And see *Simonson* v. *Spencer*, 15 Wend. 548; *Exparte Van Riper*, 20 id. 614; *Harger* v. *Cullough*, 2 Denio, 119, 123; *Corning* v. *McCullough*, 1 Comst. 47.

Mr. JUSTICE BREESE delivered the opinion of the Court:

The plaintiffs in error contend that the general banking law of 1851 cannot be altered except by a vote of the people, and by section 38 of that law the assets of the bank must first be exhausted before a stockholder can be made liable.

· We do not think, when this subject is considered, that this grave constitutional question can properly arise.

What does the constitution provide, and what are the provisions of the act in question? Section five of article ten of the constitution of this State contains the following provision: "No act of the general assembly authorizing corporations or associations with banking powers, shall go into effect, or in any manner be in force, unless the same shall be submitted to the people at the general election next succeeding the passage of the same, and be approved by a majority of all the votes cast at such election for or against such law." Scates' Comp. 71.

The fourth section provides that "the stockholders in every corporation or joint stock association for banking purposes, issuing bank notes or any kind of paper credits to circulate as money, shall be individually responsible, to the amount of their respective share or shares of stock in such corporation or association, for all its debts and liabilities of every kind." Ibid.

On the 15th of February, 1851, the general assembly enacted what is known as "the general banking law," which, on being submitted to the popular vote in the mode and at the time pre-

Smith et al. *v.* Bryan.

scribed, received a majority of all the votes cast at the election, and thenceforth the law took effect and was in force.

By section 38 of this act, it is provided, after reciting the 4th section of article 10 of the constitution, as above, "when the property, rights, credits, assets and effects of any corporation or association, put into liquidation under the provisions of this act, shall have been exhausted in the redemption of the notes and payment of liabilities, and there shall remain unpaid any indebtedness or liability of any kind, any person having a right or cause of action upon or on account of such remaining indebtedness or liability, shall have remedy in any court of record having jurisdiction, against the stockholders, for the amount due upon such indebtedness or liability, and to enforce this remedy may institute actions, or suits in equity, &c. Scates' Comp. 119.

On the 14th of February, 1861, the general assembly passed an act entitled "An act to amend the general banking law in such manner as to afford greater security to the public."

By the 1st section of article 4, of this act, it is provided that "in all suits at law or in equity against banking incorporations, a service upon any stockholder, shall be deemed good service upon the corporation, where officers of the bank cannot be found, and such fact shall appear by the sheriff's return upon the summons. In every such suit against the bank, and in any suit against one or more of the stockholders, a summons may be served upon any stockholder not a defendant, who shall be entered as a defendant from the date of such summons; and the judgment or decree rendered in such suit shall be a lien &c. upon the real estate of said bank and every stockholder so served with summons, from the day of rendition and execution issued thereon shall be a lien on the personalty, &c. The entry of judgment shall contain the names of all stockholders served. The property, both real and personal, rights, credits and effects, legal and equitable, of such bank, shall be liable first to be seized and sold, or applied in payment of judgments against stockholders, on their liability under the constitution; and the property of stockholders shall not be

taken or applied until the assets of the bank are first exhausted. Sess. Laws 1861, pp. 49, 50.

It is further provided, by section 4 of the same article, that " Whenever any judgment shall be rendered against any such bank or association, it shall be lawful, without waiting for execution against such bank or corporation, to sue out a garnishee process against the stockholders thereof, to show cause why judgment should not be rendered against them; and upon the service of such process, the court shall direct issue or issues to be made in the case; and such proceedings may be had thereon as are authorized in section 38 of the act to establish a general system of banking, approved February 15, 1851. Judgment may be rendered against any one or more stockholders who may be served with process. Id. 50, 51.

The constitution, by the fourth section of article ten, which we have quoted, declares the general principle that stockholders in banking associations shall be individually liable for the debts of the corporation to the amount of their stock. The law adopted by the people, by the thirty-eighth section, provided the means by which this liability could be enforced. It gave to a creditor a remedy against a stockholder on the exhaustion of the assets of the bank. Experience proved that this remedy, so provided, was not adequate to the security of the public; hence the act of 1861, with its peculiar title.

This act does nothing more than to provide a more speedy remedy to a bank creditor, by which the liability of stockholders can be sooner reached than by the general law. He can proceed against them to judgment, without waiting for an execution against the bank.

That the remedy in all cases for the redress of grievances of every nature, is entirely within the control of the legislature, cannot now be questioned. It has been too often so held, to be longer an open question. *Williams* v. *Waldo et al.*, 3 Scam. 264; *Reapers' Bank* v. *Willard*, 24 Ill. 437; *Wood* v. *Child*, 20 id. 211; *Bronson* v. *Kinzie et al.*, 1 How. 311. This case, so far as the doctrine of remedy is concerned, is in harmony with the case in Scammon. The point of difference is, that

this court did not hold that the contract was impaired by a change of the remedy.

In this case we cannot perceive in what manner any right growing out of contracts a stockholder in one of these corporations may be supposed to possess, which have been encroached upon or taken away from him by this law. It simply provides, when a judgment is obtained against a bank, a stockholder may be made a party to it before execution issues against the bank; but it does not declare or provide that execution shall issue against them before the property of the bank is exhausted. That is fully provided for by the first section of article six, which we have quoted. The liability of the stockholder is in no manner or degree increased; the only change made by the act of 1861, being that which allows them to be made parties to a judgment against the bank before an execution shall have issued against the bank.

But that the legislature has the power to amend the general banking law, is settled by the case of *The Bank of the Republic* v. *The County of Hamilton*, 21 Ill. 53. The amendment, then, was of a most important character, affecting, in a very serious degree, the interests of the corporation. We then held, that, like natural persons, in the exercise of their rights of organization and existence, they are subject to the control of the legislature by general laws, and that those rights which are not designed to be secured to it as property, are subject to legislative control in the same manner as the general rights of an individual. Every individual in the State is subject to such changes in the remedy provided for a redress of grievances as the legislature may prescribe, and they will be enforced, if they do not impair the obligations of the contract on which the suit is brought. We fail to perceive, in this case, in what way the contract of these stockholders has been impaired, or its obligation increased or affected in any manner, by the act in question.

The judgment must be affirmed.

*Judgment affirmed.*