TUNIS YOUNG et al.

*v.*

ALBA M. JONES et al.

*Opinion filed June 17, 1899.*

MECHANICS' LIENS—*section 24 of act of 1895 does not affect prior vested rights.* The liens created by section 24 of the Mechanic's Lien law of 1895, (Laws of 1895, p. 235,) in favor of persons furnishing labor or material on a public improvement, cannot be enforced against the holders, for value, of orders by the contractor payable out of the fund due him, which were executed and delivered and presented to and accepted by the officer charged with the duty of paying out the fund, before the passage of the act.

*Jones* v. *Young*, 78 Ill. App. 78, reversed.

APPEAL from the Appellate Court for the Second District;—heard in that court on appeal from the Circuit Court of Iroquois county; the Hon. JOHN SMALL, Judge, presiding.

ISAAC MILLER HAMILTON, and WILBER, ELDRIDGE & ALDEN, for appellants.

W. F. PIERSON, A. F. GOODYEAR, FREE P. MORRIS, and F. L. HOOPER, for appellees.

Mr. JUSTICE WILKIN delivered the opinion of the court:

On February 26, 1895, the commissioners of highways of the town of Stockland, Iroquois county, and the board of supervisors of that county, let a contract to one P. E. Lane, by the name of the Lane Bridge and Iron Works Company of Chicago, to furnish the material and labor for and to erect a bridge at Sugar Creek Chapel, in said township. The price to be paid was $4400, one-half by the county and the other half by the township. On March 11 following, Lane executed to the Exposition Salvage Company of Chicago, Illinois, the following order:

"*B. F. Price, County Clerk Iroquois County, Illinois:*

"Upon receipt of the report of special committee appointed to act in the matter of building a bridge at Sugar Creek Chapel, in the town of Stockland, pay to the Columbian Exposition Salvage Company of Chicago, Illinois, the sum of $1100, payable in order on the county treasurer, said order to be issued by you when payment has been ordered by C. A. Newburn, G. S. Hummer and Herman Salmon, the said committee, and upon the presentation thereafter of this order to you.

LANE BRIDGE AND IRON WORKS,
By P. E. LANE, *Pr.*"

On the same day he executed a similar order to the firm of Young & Hamilton for the like amount. Both of these orders were on the day of their date presented to Price, who endorsed upon them, "Will issue order as above indicated.—B. F. Price, county clerk." Lane began work on the bridge soon after the execution of the contract but did not complete it until April, 1896.

On June 26, 1895, the legislature passed an act providing, among other things, as follows:

"Sec. 24. Any person who shall furnish material, apparatus, fixtures, machinery or labor to any contractor for a public improvement in this State, shall have a lien on the money, bonds or warrants due or to become due such contractor for such improvement: *Provided*, such person shall, before any payment or delivery thereof is made to such contractor, notify the officials," etc.

About the time of the completion of the bridge, and before payment of any of the county's part of the contract price, several persons, including the appellees, furnished material and labor to Lane for the construction of the work, and filed notices of claims for liens with Price, the county clerk, under the provisions of said section 24. Before the filing of such notices the amount due from the township had been fully paid to Lane. These appellants claim the fund remaining due from the county under their orders of March 11, 1895, and appellees claim it by virtue of their alleged liens under the act of June 26. Price, the county clerk, holding the money, filed this bill of interpleader in the circuit court of said county, making appellants and appellees parties, and praying for the direction of the court in the issuing of orders for the payment of the money. After answers were filed an interlocutory decree was entered sustaining the bill and ordering the defendants to plead, setting up their respective claims. Issues being properly joined, the cause was referred to the master to take and report the evidence, which being done, a final decree was entered sustaining the claims of appellants and awarding costs against the other defendants. The Appellate Court reversed that decree on appeal by the present appellees, and from that judgment of reversal this appeal is prosecuted.

The right of appellants to the fund under the orders of Lane, but for the act of June 26, is not questioned, nor is it, on the other hand, denied that under the provisions of that act appellees would be entitled to the liens claimed by them had not those orders been given prior to the passage of the law. The statute in relation to mechanic's liens, approved and in force June 26, 1895,—of which section 24 is a part,—was before us in so far as it applied to the rights of sub-sub-contractors and owners of property, in *Andrews* v. *Atwood,* 167 Ill. 249, and *Culver* v. *Atwood,* 170 id. 432, and we held the act created substantial rights as distinguished from a mere remedy, which, being

detrimental to the owner of the improvement, impaired the obligation of his contract entered into prior to its taking effect. Section 24 was not involved in those cases and no consideration was given to it, hence these decisions throw no light upon the question to be determined here. While that section undoubtedly creates valuable and substantial rights in those furnishing labor and material for a public improvement, it does not in any way materially affect the public, which can only be charged with the original indebtedness. As to the public, no property rights are affected. It follows that, so far as the public are concerned, this section 24, applied to contracts for improvements, is merely remedial, and so far the decision of the Appellate Court is free from objection. It does not, however, as we understand the case, dispose of the substantial controversy between the parties, which involves the question, can the liens here insisted upon be enforced against holders of the orders of Lane upon the public fund, executed and delivered prior to the passage of the law creating the liens, and which had also been presented and accepted by the officer whose duty it was to pay out the fund prior to that time.

It is not denied that the orders were each executed upon a good and valuable consideration, that to the salvage company being for materials furnished and that to Young & Hamilton for money advanced. The only dispute between the parties in this regard is, whether the materials furnished and money advanced were for the construction of this particular bridge or upon an indebtedness then existing between the parties, and this controversy of fact is not of controlling importance in the determination of the question involved.

Did the execution and delivery of those orders to appellants, and their presentation to and acceptance by Price, the county clerk, constitute contracts between appellants, Lane and the county? If they did, it is clear the act of the legislature subsequently passed cannot be

given a retrospective effect, so as to impair the obligation of those contracts. It would seem, upon the authority cited in appellants' brief, that the orders amounted in equity to an assignment of so much of the fund thereafter to come into the county clerk's hands as would be found necessary to pay them. "An order to pay out of a specific fund has always been held to be a valid assignment in equity and to fulfill all the requirements of the law." (*Christmas* v. *Russell's Exrs.* 14 Wall. 68, and cases cited.) It is not essential to the validity of such assignment that the fund upon which it is made should have an actual existence at the time the order is given or that the assignment should be for the whole fund. (*Warren* v. *First Nat. Bank of Columbus,* 149 Ill. 9, and authorities cited.) "It is a general rule that an order payable out of a particular fund operates as an equitable assignment of the fund, not only as between the drawer and the payee, but as regards the drawee also, notwithstanding the order may not be accepted by the latter party." (2 Am. & Eng. Ency. of Law,—2d ed.—1059, 1060.)

It cannot, we think, be seriously questioned that these orders amounted to a valid contract, in equity, between Lane, the drawer, and appellants, the drawees. The county makes no question as to their binding effect upon it, but, on the contrary, Price, its official representative having the custody of the fund, voluntarily comes into court asking that the right to that fund shall be determined between the contending parties. His authority to act in the matter must therefore be regarded as unquestioned. (*James* v. *City of Newton,* 142 Mass. 366.) It seems to us very clear that if this were a suit in chancery between appellants and the county of Iroquois to recover the amount of said orders out of the fund in the county clerk's hands, they would be entitled to a decree in their favor. It is only because of this subsequent act of the legislature, if at all, that that right of action can be defeated; and if this position is true, then it must follow

that the statute, so construed as to affect that contract, is one impairing the obligation of a contract, and void.

It is said, in determining whether a statute is void under the constitutional limitation upon the power of the legislature to pass laws impairing the obligation of contracts, the test is, whether the rights impaired by the legislature are vested rights, and it is often more or less difficult to determine that fact. Judge Cooley, in his work on Constitutional Limitations, (6th ed. p. 436,) says: "The chief restriction upon this class of legislation is, that vested rights must not be disturbed; but in its application as a shield of protection, the term 'vested right' is not used in any narrow or technical sense, or as importing a power of legal control merely, but rather as implying a vested interest, which it is right and equitable that the government should recognize and protect, and of which the individual cannot be deprived arbitrarily without injustice." A vested right has been defined, briefly, as an immediate, fixed right of present or future enjoyment. The rights of appellants, under their orders of March 11, we think clearly fall within this definition.

It is said in the argument that appellants must have known the legislature could pass such a lien law as the one enacted at the time they took these orders. Conceding that to be true, it certainly cannot be said that they did not have the right to assume that if such a law was passed it could not be given the effect of destroying the contract which they then entered into.

We are of the opinion that the decree rendered by the circuit court was in conformity with the legal rights of the parties, under the evidence adduced, and that the Appellate Court erred in its reversal of that decree. The judgment of the Appellate Court will accordingly be reversed and the decree of the circuit court affirmed. The cause will be remanded to the latter court, with directions to carry its decree into effect.

*Reversed and remanded.*