## D. A. Anderson, Appellant, v. Charles H. Baker et al., Appellees.

### Gen. No. 5,665.

1. STATUTORY LAW—*construction.* A statute will be given prospective force only, unless a purpose to give it retrospective force is expressed in the act itself, or is to be inferred therefrom by necessary implication.

2. ATTORNEY AND CLIENT—*lien law construed.* The provision in the attorney's lien law "that attorneys at law shall have a lien upon all claims, demands and causes of action, including all claims for unliquidated damages, which may be placed in their hands by their clients for suit or collection," creates a lien upon all such claims during the preliminary stages and before suit or action is brought.

3. ATTORNEY AND CLIENT—*lien law.* The provision in the attorney's lien law with reference to claims, etc., "or upon which suit or action has been instituted," continues the lien after the bringing of suit and also gives a lien to a lawyer who comes into a case after suit is begun.

4. ATTORNEY AND CLIENT—*lien law.* The provision of the attorney's lien law giving liens for services "rendered or to be rendered" does not express an intention to give the law a retrospective effect, but refers to the time when the lawyer is using the law to enforce his lien.

5. ATTORNEY AND CLIENT—*liens.* The attorney's lien law providing that attorneys "shall have a lien upon claims which may be placed in their hands" indicates that the subject-matter to be covered by the lien is not past but future.

6. ATTORNEY AND CLIENT—*liens.* The attorney's lien law was not intended to have retrospective force, although it was intended to cover almost all classes of work done by the attorney from the time the matter is placed in his hands until its termination.

7. STATUTORY LAW—*lien act creates new right.* An act giving a lien does not give a remedy, but creates a new right in the property of another.

8. STATUTORY LAW—*power to enact retrospective laws.* Where a contract is made for legal services at a time when there is no law giving the attorney a lien on any property therefor and no lien is contemplated, the legislature has no power to create a lien under such contract.

9. CONTRACTS—*abridgment by statute.* The principle that the legislature cannot abridge contractual relations is subject to no modifications.

10. ATTORNEY AND CLIENT—*lien.* Where a contract is made for legal services prior to the attorney's lien law and notice is given to the defendants after the enactment thereof as to the terms of the contract, the attorney's rights rest entirely on the contract, and if he cannot bind his clients under the lien act he cannot bind defendants who are entitled to every defense the clients could interpose.

11. ATTORNEY AND CLIENT—*lien.* Under the attorney's lien law a lien cannot be enforced for services performed before its enactment, since its enforcement would charge an additional incumbrance upon the property and change contractual relations and not merely extend the attorney's remedy.

Appeal from the Circuit Court of Grundy county; the Hon. EDGAR ELDREDGE, Judge, presiding. Heard in this court at the April term, 1912. Affirmed. Opinion filed October 15, 1912.

WILLIAM H. BOYS and D. R. ANDERSON, for appellant.

C. F. HANSON and DUNCAN, DOYLE & O'CONOR, for appellees.

MR. JUSTICE WILLIS delivered the opinion of the court.

Appellant entered into a contract with certain heirs at law of Laura A. Goold, deceased, to perform certain

legal services. Thereafter, on May 10, 1907, he filed a bill in the Circuit Court of Grundy county in behalf of said heirs at law to set aside her will, making the devisee, legatees and executor defendants. Later, without the consent of appellant, the parties settled the suit for a certain sum of money. Prior to the settlement, appellant had notified the defendant that he had made a contract with the complainants, whereby he was to have one-half of whatever was recovered on account of such suit, and that he claimed a lien therefor under the attorney's lien law in force July 1, 1909. After the settlement, and by leave of court, appellant filed an intervening petition asking that the rights arising under the lien be adjudicated and his lien enforced. On notice all the parties appeared and moved the court to dismiss the petition. The motions were granted and the petition dismissed at the costs of appellant, and he prosecutes this appeal.

The only question presented for our consideration is whether an attorney is entitled to a lien upon the property of his client by virtue of a contract entered into prior to the passage of the attorney's lien act.

The act creating an attorney's lien provides:

"That attorneys at law shall have a lien upon all claims, demands and causes of action, including all claims for unliquidated demands, which may be placed in their hands by their clients for suit or collection, or upon which suit or action has been instituted, for the amount of any fee which may have been agreed upon by and between such attorneys and their clients, or, in the absence of such agreement, for a reasonable fee, for the services of such attorneys rendered or to be rendered for their clients on account of such suits, claims, demands, or causes of action; Provided, however, such attorneys shall serve notice in writing upon the party against whom their clients may have such suits, claims or causes of action, claiming such lien and stating therein the interest they have in such suits, claims, demands, or causes of action, and such lien shall attach to any verdict, judgment or decree entered

and to any money or property which may be recovered, on account of such suits, claims, demands, or causes of action, from and after the time of service of the aforesaid notice.  On petition filed by such attorneys or their clients, any court of competent jurisdiction shall, on not less than five days' notice to the adverse party, adjudicate the rights of the parties and enforce such lien in term time or vacation.''

Appellant contends that the act, by its express terms, is retrospective; that it is remedial, and that the court erred in dismissing the petition.

Appellant argues that if the legislature had not intended to give a lien based upon contracts entered into prior to the enactment of the lien act, the words, ''or upon which suit or action has been instituted'' would have been made to read, ''or upon which suit or action shall be instituted'' and the words, ''may have been agreed upon'' would have read, ''may hereafter be agreed upon'' or ''may be agreed upon;'' that the act also expressly gives a lien for services already rendered, as well as for services to be rendered, relying upon the words, ''for the services of such attorneys rendered or to be rendered,'' and that if a lien was intended only for services rendered after the enactment of the law, this clause would have read, ''for the services of such attorneys hereafter rendered or to be rendered,'' or if the words, ''rendered or to be rendered'' were intended to mean rendered prior to or subsequent to the notice, the legislature would have so repressed it; that unless retrospective construction is given to the act, the words quoted could be given no meaning in construing the act, and the well known rule of construction that courts must give meaning to every word in the law would be violated, and that to permit any other construction it would be necessary to alter the wording of the act.

Were it the rule that a statute should be construed retrospectively unless a contrary intention is manifested by words of the act itself, then there would be much force in that portion of appellant's contention.

The contrary, however, is the rule, and it is a universal rule of construction that a statute will be given prospective force only, unless a purpose to give it a retrospective force is expressd by a clear and positive command in the act itself, or unless it is to be inferred by necessary, unequivocal and unavoidable implication from the words of the act.

In the case of Dobbins v. First Nat. Bank of Peoria, 112 Ill. 553, it is said: "It is well settled by authority that statutes are not to be given a retrospective operation except where it is manifest the legislature intended they should have such operation; and, as already shown, it is not competent even for the legislature to give such operation to an act where it will affect existing or vested rights."

In Means v. Harrison, 114 Ill. 248, it was declared to be the general rule "that a statute is to operate *in futuro* only, and is not to be construed to affect past transactions, and that if it is left doubtful what was the real design as to its having a prospective or retroactive effect, the statute must be so construed as to have a prospective effect only."

In People v. McClellan, 137 Ill. 358, the court said: "In Potter's Dwarris on Statutes, p. 162, in a note, it is said: 'The American authorities are quite uniform on the retroactive effect of statutes. The general rule is, that no statute, however positive in its terms, is to be construed as designed to interfere with existing contracts, right of action or suits, and especially vested rights, unless the intention that it shall so operate is expressly declared; and courts will apply new statutes only to future cases, unless there is something in the very nature of the case, or in the language of the new provision, which shows that they were intended to have a retroactive operation. And although the words of the statute are broad enough, in their literal extent, to comprehend existing cases, they must yet be construed as applicable only to cases that may thereafter arise, unless a contrary intention is une-

quivocally expressed therein.'" Citing Thompson v. Alexander, 11 Ill. 54; People v. Thatcher, 95 Ill. 109. The same rule of construction is announced in Hatcher v. Toledo, W. & W. R. Co., 62 Ill. 477; Jimison v. Adams County, 130 Ill. 563; Porter v. Glenn, 87 Ill. App. 106.

This doctrine is recognized and indorsed in the case of Rock Island Nat. Bank v. Thompson, 173 Ill. 593, where it is said: "Retrospective laws are not looked upon with favor. Statutes are usually construed as operating on cases which come into existence after the statutes are passed, unless a retrospective effect is clearly intended." Citing Endlich on Interp. of Statutes, secs. 271, 273, 275, 276; Betts v. Bond, Breese, 287; Thompson v. Alexander, 11 Ill. 54; In re Tuller, 79 Ill. 99.

In O'Donnell v. Healy, 134 Ill. App. 192, the court said: "In Endlich on the Interpretation of Statutes, section 271, it is said: 'They are construed as operating only on cases or facts which come into existence after the statutes were passed unless a retrospective effect be clearly intended.' In the same section the author says: 'A construction giving to a statute a prospective operation is always to be preferred, unless a purpose to give it a retrospective force is expressed by clear and positive command, or to be inferred by necessary, unequivocal and unavoidable implication from the words of the statute, taken by themselves and in connection with the subject-matter, and the occasion of the enactment, admitting of no reasonable doubt, but precluding all question of such intention.'"

We think the words, "That attorneys at law shall have a lien upon all claims, demands and causes of action, including all claims for unliquidated damages which may be placed in their hands by their clients for suit or collection," creates a lien in favor of lawyers upon all claims, demands and causes of action during the preliminary stages and before suit or action is brought. Had there been no further provision, the

lien of the lawyer would terminate with the beginning of the suit, or at least there would be a serious doubt whether the lien continued after the institution of the suit or cause of action. The following words of the statute, "or upon which suit or action has been instituted," continues the lien and makes it operative after bringing the suit. The words last quoted also give a lien to a lawyer who comes into a case after the beginning of the suit. We do not think it can be said that these words clearly and unequivocally express a purpose or intention on the part of the legislature to make this law applicable to contracts entered into by attorneys, and to suits or actions brought by them before the enactment of the law.

It seems to us untenable that the words, "rendered or to be rendered" express an intention to give the law a retrospective effect and force. The lawyer has a lien for services rendered or to be rendered. Rendered when? Appellant contends at any time in the past, regardless of the time of the taking effect of the statute. Appellees contend that it means for services rendered at any time after the taking effect of the law and before the time when the lawyer uses this statute as a weapon to collect his compensation. We hold that the words, "rendered or to be rendered" have reference to the time when the lawyer is using this law as a weapon, and if the word "rendered" were omitted, the lawyer could not enforce a lien for services rendered up to the time that he served notice under the statute, but would only have a lien for services "to be rendered" thereafter. Suppose further that the words "to be rendered" were omitted from the statute, then the lawyer would have a lien only for work already performed and if the suit were settled by the client after its institution, without the consent of the lawyer, the lawyer would have a lien only for work actually done up to the time of the settlement. Such a law could afford but very little protection to the lawyer.

The act provides: "That attorneys at law shall

have a lien;" not that attorneys at law have a lien, but "shall have a lien." The use of the verb clearly indicates that the subject-matter to be covered by the lien is not past but future. Shall have a lien upon what? "Upon all claims, demands, and causes of action, including all claims for unliquidated demands which may be placed in their hands." Placed in their hands when? Before the passage of the act or after the passage of the act? The act states plainly "which may be," not which have already been placed in their hands.

The legislature, no doubt, intended to make the act broad enough to cover almost all classes of work done by a lawyer for a client, from the time the work is placed in his hands until the termination of the matter by litigation or otherwise. Such an intention would cause the act to operate in favor of the lawyer during the preliminary stages of the work, as well as after bringing the suit, and until its termination. It is our opinion, however, that the legislature did not intend that the act should apply to work done and contracts entered into by a lawyer prior to its enactment, but it was intended to apply only to contracts entered into and to work done after the statute went into force. We think there is no warrant for appellant's contention that the statute gives it a retrospective effect or force.

We come now to the argument that the act is remedial only, and therefore is retrospective. When the legislature enacted the mechanic's lien law they declared it to be remedial, but the Supreme Court held that it was not remedial where it affected contracts entered into prior to its enactment. Kinney v. Sherman, 28 Ill. 520; Andrews & Johnson Co. v. Atwood, 167 Ill. 249. The wording of that act, to all intents and purposes, was as broad as the act under consideration, yet the legislature declared its intention to make the act remedial by inserting in the act itself a section to that effect. If the legislature intended the act giv-

ing attorneys liens to be retrospective or remedial in character, we think it safe to presume it would have made the same declaration. No such declaration was made. We think that no distinction exists between the principles that should apply in construing the attorney's lien act and those which have been already applied to construing the mechanic's lien act.

In the Kinney case, *supra,* there was a contract for the building of a house for a specified figure. The work was to be completed by a definite day stated in the contract, but owing to alterations in the plans the petitioner alleged he was unable to complete the contract on the day specified, but that the defendants had agreed to permit him to proceed with the work and extended the time of its completion, but failed to specify any definite time. The mechanic's lien law in effect at that time required as a condition precedent to the validity of the lien that the date of completion should be specifically agreed upon, and it was there held that the lien could not attach unless the contract provided a time within which the work was to be completed—the law would not imply a time for its completion. The petitioner, recognizing the fatality of the lack of this element, urged that his case came within the act amending the lien law passed in 1861 (chap. 65, sec. 179). The contract under which the petitioner sought to establish his lien was entered into October 1, 1858, and the court, in disposing of this contention, said: "If this statute only affected the remedy, the petitioner's view would be correct, but it affects the original contract. This contract was made in 1858 under which the petitioner had no lien, nor had he any lien at the time of the passing of the act. The act makes a new contract for the parties, entirely different in its character, which it is not in the constitutional competency of the legislature to do. They might as well declare that a promissory note, executed years ago, shall be a lien on the homestead. They can deal with remedies, but not with contracts which parties have

voluntarily and understandingly made. Courts may relieve from their hardships, or enforce them; the legislature can do neither." We see no distinction between the Kinney case and the facts presented upon this record. At the time appellant entered into the contract there was no law giving him a lien upon the property in controversy, or upon any property belonging either to his client or third parties. He did not contemplate a lien or even a possibility of one at the time the contract was entered into. Neither did his client, and it is not within the power of the legislature to create a lien upon the property of another by the passage of the act. It is not an answer to this position to say that under the contract the money was due and owing him and the act simply gave him another means by which he might recover it. The petitioner in the case just quoted from might contend with as much reason that the act of 1861 was giving him nothing he did not already possess, but simply afforded him a means of enforcing his rights. The giving of a lien is not the giving of a remedy. It is the creation of a right upon the property of someone else.

In the Atwood case, *supra,* a petition was filed by a sub-sub-contractor to enforce a mechanic's lien for labor and material furnished in the erection of a certain building. On May 27, 1895, Atwood entered into a contract in writing with the George A. Fuller Company for the erection of a large building. The Fuller people sublet portions of the work and the Andrews & Johnson Company performed part of the work under a contract from a sub-contractor. Atwood made no contract with any one except the George A. Fuller Company, and there were no contractual relations existing between him and the petitioners. The mechanic's lien law, under which the petitioners sought relief, went into effect on June 26, 1895. Prior to the passage of this act a sub-sub-contractor could not maintain a bill or petition to enforce a lien. It was there contended that the passage of the act merely

gave to sub-sub-contractors a remedy and that the legislature might properly create it. It was contended by the defendant that the act was not merely remedial, but imposed new duties and created substantial rights and that its application to contracts entered into prior to its enactment would be obnoxious to the constitutional provisions prohibiting the impairing of the obligation of contracts. The court said: ''Under the contract between Atwood and the Fuller Company, as the law existed when it was executed and became binding on the respective parties, Atwood became bound to pay the Fuller Company the several amounts provided in the contract, unless that company had allowed indebtedness to accrue for labor or materials furnished to it for the building, which might become liens under the law as it existed June 26, 1895. Atwood, to protect himself, was then only required to take sworn statements from the Fuller Company of such persons as had sub-contracts with it, and the Fuller Company was entitled to receive the amount due by the contract, provided it had paid its sub-contractors, disregarding the fact entirely whether its sub-contractors had paid their sub-contractors or not. But the law of 1895 conferred new rights upon sub-sub-contractors—rights which had never before existed under the laws of this State. They were given a right to a lien, and new obligations were imposed upon the owner of the premises and upon the original contractors.'' The creation of a lien in favor of the sub-sub-contractors is here declared to be not the creating of a remedy merely, but the conferring of new rights which never before existed. The attorney's lien law does precisely the same thing. The court further says in the Atwood case: ''The new act confers upon claimants rights heretofore unknown to the law, and at the same time it subjects the property of the owner to new liabilities. But if the construction contended for should be given the Act of 1895, and it should be held to govern contracts entered into before the act

was passed, it would be an act impairing the obligation of contracts, and would clearly fall within the inhibition of the constitution. Under the contract as executed on May 27, 1895, the George A. Fuller Company and its sub-contractor, the Charles H. Simmons Company, were entitled to enforce a lien on the premises of Atwood for labor and material furnished under contract in the erection of Atwood's building, but no other contractors or material-men had any lien whatever. But under the new statute, if it governs this case, not only the Fuller Company and the sub-contractor, the Simmons Company, have liens that may be enforced, but sub-sub-contractors may also come in and enforce liens on the property. Thus the contract of Atwood, by the force of a statute, is changed, and new obligations imposed upon him and his property in favor of others who were strangers to him. The obligation of contracts is too sacred to allow this to be done.'' The act in relation to sub-sub-contractors casts upon the owner of the premises no greater burden than the attorney's lien act did upon the defendants in the original suit. It created substantial rights as does the attorney's lien act and seeks to incumber property with a lien without any warrant of law. In the Atwood case it is further said, on page 255: ''It has been suggested the change in the statute was a mere change in remedy, in which appellee had no vested interest. We do not concur in that view. The change in the law, as said before, if applied to the contract in question, affected the substantial rights of the parties.''

The Atwood case and some others are attempted to be distinguished by appellant on the ground that no contractual relations existed between appellant and the defendants in the original suit. Nor does that, in our opinion, affect the principle considered. There were no contractual relations between Atwood and the sub-sub-contractors, but the petitioners therein were seeking to hold the defendant's property liable to a

lien when the rights of the petitioners emanated from a contract entered into by Atwood and the Fuller Company.

Obviously if the legislature cannot alter or change contractual relations, it cannot make an entirely new contract without the consent or knowledge of the parties. The fundamental principle that the legislature cannot abridge contractual relations is subject to no modification. Appellant, in the present case, predicated his right upon a contract entered into with his clients before the passage of the lien law, under which he seeks to hold the property of the defendants. If he has any rights, they rest entirely upon the contract, and it is the basis of his petition, and upon nothing else, and if unable to bind his own clients by the lien act on account of the contract, he will not be permitted to bind third parties whom he claims are strangers to the contract. By the terms of the attorney's lien act, after the service of notice, the party receiving the same, where the contract for a service is entered into after the passage of the act, is a party to the contract, and will be bound by its terms. The defendants are entitled to every defense that clients could interpose upon this or any other hearing in which enforcement of the contract is sought.

The holding in Andrews & Johnson Co. v. Atwood, *supra,* is also followed in Culver v. Atwood, 170 Ill. 432, and in Kendall v. Fader, 199 Ill. 294.

In the Fader case a solicitor's fee was allowed by the trial court under the act in force at the time the petition for a lien was filed. The act in force at the time the contract was entered into made no provision for the allowance of attorney's fees. The Appellate Court of the First District reversed the finding in 99 Ill. App. 104, in so far as the attorney's fees are concerned, holding that: "Under the contract and the law which entered into and formed a part of it when it was made, no lien for solicitor's fees was provided. To hold that such lien could be given by the statute

subsequently enacted would be not to extend appellee's remedy, but to charge the property for his benefit with an additional incumbrance." On appeal, in 199 Ill. at page 308, the Supreme Court said: "The Mechanic's Lien Law of 1874, as amended in 1887, entered into and formed a part of the contract under consideration, and inasmuch as that act provided for no lien for solicitor's fees, such lien could not be given by a statute subsequently enacted. It is true that remedies, which the law provides to enforce contracts, constitute no part of the contracts themselves, and are within the control of the legislature. Smith v. Bryan, 34 Ill. 364; Templeton v. Horne, 82 Ill. 491; Woods v. Soucy, 166 Ill. 407. Here, however, the allowance of such lien for an attorney's fee, when it was not authorized by the act in force when the contract was made, would not be an extension of appellee's remedy, but would be a charge of an additional incumbrance upon the property for his benefit. We agree with the Appellate Court that the allowance of the fee was improper."

Appellant, in support of his contention, invokes the authority of Smith v. Bell, 70 Ill. App. 490; and Jones v. Young, 78 Ill. App. 78, reversed in 180 Ill. 216. Both of these cases involve a construction of section 24 of the lien act which applies solely to public improvements. These cases are clearly distinguishable from the case at bar, and the Supreme Court points out wherein the difference lies in Young v. Jones, 180 Ill. 216, where the court says, on page 219: "While that section undoubtedly creates valuable and substantial rights in those furnishing labor and material for public improvements, it does not in any way materially affect the public, which can only be charged with the original indebtedness. As to the public, no property rights are affected. It follows that, so far as the public is concerned, this section 24, applied to contracts for improvements, is merely remedial, and so far the decision of the Appellate Court is free from objec-

tion." It is true, as appellant herein contends, that the basis of the Culver v. Atwood, Andrews & Johnson Co. v. Atwood and Kendall v. Fader cases, *supra,* is an impairment of the contractual obligation and an interference with property. It is also true that the basis of the defendant's contention here is the same. Property rights and contractual relations will be affected if appellant can avail himself of a lien not in force at the time the contract was made. The only reason section 24 of the mechanic's lien law was held to attach was on the principle that property rights would not be materially affected. Why was this section 24 held to be remedial and others not? Because the public had no property rights that could be affected. The opinion does not state that the Supreme Court intended to overrule or set aside its former holding, and it not only adheres to its former holdings in considering the same principles in Kendall v. Fader, *supra,* but cites the Young v. Jones case in support of its position, clearly showing, as we think, that the cases are not in conflict but in perfect harmony. The Supreme Court refused to allow attorney's fees as part of the lien in the Kendall v. Fader case because the law giving the lien was not in force at the time the contract was entered into, and to do so would be to impose additional rights in remedies. If appellant's contention is sound, then the power lies vested in the legislature to pass laws declaring the property belonging to parties not parties to any character of contract outstanding, subject to liens or other incumbrances it might seek to impose. Such a doctrine is wholly unsound in our opinion, and the Supreme Court reversed the Young v. Jones case for this very reason and gave full force and effect to this principle.

Invoking the same rules of construction in the case at bar as employed in the cases above cited, we conclude that to enforce the lien for services performed before the enactment of the attorney's lien law would not be an extension of appellant's remedy, but would

be a charge of an additional incumbrance upon the property for his benefit, and that the court did not err in dismissing the petition.

The order is therefore affirmed.

*Affirmed.*