The People of the State of Illinois, Defendant in Error, v. Waclaw Perlowski et al., Plaintiffs in Error.

Gen. No. 32,614.

Heard in the first division of this court for the first district at the April term, 1928. ▮▮▮▮▮▮▮▮
Opinion filed February 11, 1929.

LEVINSON, REIN & FINK, for plaintiffs in error; THEODORE E. REIN, of counsel.

ROBERT E. CROWE, State's Attorney, for defendant in error; EDWARD H. TAYLOR, ARTHUR CARLSTEN, JAMES H. MAHONEY and MORTIMER C. GROVER, of counsel.

MR. JUSTICE McSURELY delivered the opinion of the court.

By this writ of error reversal is sought of a judgment of the municipal court of Chicago entered upon trial by the court wherein defendants were charged with violating the Illinois Securities Law, generally known as the Blue Sky Law, Cahill's St. ch. 32, ¶ 254 *et seq.* Frank Perlowski was found guilty and sentenced to 120 days' imprisonment in the county jail and fined $1,000. Valentine and Waclaw Perlowski were each fined $500 and sentenced to 30 days' imprisonment in the county jail. Zygmunt and Michael J. Perlowski were acquitted.

Defendants were charged with having on March 13, 1923, sold to the complaining witness, Dr. T. M. Maturzynska, certain second mortgage gold bonds purporting to be secured by a trust deed conveying a leasehold interest and building on Clark Street between Madison and Washington Streets, Chicago. The State charged that these bonds came under Class "D" of the

Securities Law, and it was admitted that no statement was filed with the secretary of state, which the statute requires as a condition precedent to the sale of securities in Class "D." The defendants, on the contrary, claim that such securities are under Class "A" and therefore exempt from the provisions of the statute.

The record shows that defendants, who are brothers, acquired a 99-year leasehold on the real estate aforesaid, which lease was transferred to the Loop Office Building Corporation without any profits to the defendants. This corporation was capitalized for $250,000, each of the defendants subscribing for $50,000 of stock and paying upon their subscriptions about $137,000; $57,000 of the stock was placed in the hands of the contractor and architect as security for their claims. None of the defendants received any shares of stock or any bonds or any compensation whatsoever. A first mortgage was placed on the property to secure $550,000 of bonds. This entire issue was taken by a bond mortgage company of Detroit. A well-known architect was employed and the construction of the building was let to competent building contractors. The cost was estimated at between seven and eight hundred thousand dollars, but it was found necessary to raise an additional amount for the construction of the building, and on March 1, 1921, a second mortgage bond issue was created to the amount of $400,000 at 7 per cent. These junior bonds were secured by a trust deed dated March 1, 1921, executed and acknowledged April 13, 1921, and recorded in the recorder's office of Cook county April 16, 1921. The sale of some of these bonds is the subject of the offense charged in the instant case.

The construction of the building proceeded until on or about May 1, 1922, when it was virtually completed, with some tenants, but by March 13, 1923 (the date of the alleged violation), the building was completely erected and finished and with tenants to the extent of 90 per cent of its capacity. On March 12 or 13, 1923,

at the instance of Waclaw Perlowski, Dr. Maturzynska, the complaining witness, purchased one of these $500 second mortgage bonds.

At the time of the issuance of these second mortgage bonds, the Securities Law, paragraph 7, section 4, being the law in force June 10, 1919, provided that any bonds secured on real estate or a leasehold in case it is not a first mortgage lien, "shall each bear a legend in red characters not less than one-half inch in height, indicating (1) that the mortgage is on a leasehold, if that be the case, and (2) that the mortgage is a junior mortgage, if that be the case." The bonds in question were in different denominations and each bore the required legend in red characters not less than one-half inch in height, reading: "Legend: Secured by junior mortgage on leasehold." It also appears that on the preliminary certificates issued to subscribers was printed in red letters one-half inch in height the information that they were junior leaseholds bonds, and in all the literature advertising them for sale prospective purchasers were advised that they were junior mortgage bonds on a leasehold.

A large number of these bonds was subscribed for prior to July 1, 1921, the date upon which the Securities Law was amended by the amendment of June 11, 1921, Cahill's St. ch. 32, ¶ 257, which changed somewhat the requirement with reference to bonds of this character. This amendment provided, in substance, that when bonds were secured on a leasehold and the mortgage is a junior mortgage, the notes and bonds secured by the junior mortgage shall each bear across "the face and text thereof" a legend in red letters not less than one-half inch in height stating (1) that the mortgage is a junior mortgage and (2) that it is on a leasehold. It will be noted that before this amendment the legend in red letters could be placed anywhere on the bond, while the amendment provided that it should be "on the face and text thereof."

When the building was completed and occupied the indebtedness was $550,000 on the first mortgage bonds, $250,000 on the second mortgage bonds, and there were judgments and claims in addition amounting to $52,000, or a total indebtedness of approximately $852,000. Witnesses estimated the value of the building and leasehold as between $1,250,000 and $1,500,000. Their testimony was not controverted. None of the defendants received any salary or profits out of the transaction. It was also in evidence that the issuance of these bonds was in accordance with the advice of defendants' attorney, who advised that the issuance of the bonds complied with the Securities Law then in force—that is, before the amendment of June 11, 1921.

The State does not point out where in any particular the issuance of the bonds violated the statute in force at the time they were issued. The point seems to be that, because the bonds and trust deed securing them are dated March 1, 1921, but the trust deed was not acknowledged until April 13 nor recorded until April 16, 1921, the bonds were not secured on a leasehold interest or anything else. There is no merit in this. The bonds composed a serial issue. Each contained provision that the trust deed and bonds were to be taken and considered together, as parts of one and the same contract. The promise to pay contained in the bonds dated back to March 1, 1921, and the bonds drew interest from that date. It is the frequent method in issuing bonds on real estate to give them some date, which usually is prior to the date of the acknowledgment of the trust deed and of its recording. Under such circumstances the bonds are secured by the mortgage or trust deed as of the date of the delivery of the deed. The subsequent recording is for the purpose of notice. In Jones on Corporate Bonds & Mortgages, sec. 205, p. 229, it is said:

"Though the bonds are issued and sold at different dates, the whole issue is regarded as made of the date of the trust deed."

In *Commonwealth v. Susequehanna & D. R. Co.*, 122 Pa. St. 306, the court said:

"It has been held to be a presumption of law that all the bonds were issued at the same time which were secured by the same mortgage, and that the fact that they were numbered consecutively gave no priority to any, and interfered in no manner with the equality of their holders on distribution."

To the same effect is *Pittsburgh, C., C. & St. L. Ry. Co. v. Long Island Loan & Trust Co.*, 172 U. S. 493, where it was held that the lien of a trust deed has its origin in the execution and delivery of the same.

"And when any of those bonds become the property of a *bona fide* holder, the lien given to secure them related back to the date of the mortgage."

We have little difficulty in arriving at the conclusion that, when the trust deed was executed and delivered, the bonds secured thereby then acquired their legal character as securities in Class "A."

Were these Class "A" bonds automatically transferred to Class "D" securities and subject to the provisions of the Securities Act by the subsequent amendment of June 11, 1921? The only detail, material to the present consideration, in which this changed the law was the requirement that the legend in red letters should be "on the face and text" of the bonds; the statute, before amended, did not designate any particular place.

Courts will adopt, if possible, a construction of a statute that will not impair the validity of existing contracts. This is especially true when, as here, the amendment contains no retroactive clause. Under the Constitution no State has the power to pass any *ex post facto* law impairing the obligation of contracts. Section 10, Article I, Constitution of the United States. The rule is well stated in 6 R. C. L. 365:

"That the law in force at the time a mortgage is executed, with all the conditions and limitations it imposes, is the law which determines the force and effect

of a mortgage; and hence it is that changes in the laws, imposing conditions and restrictions on a mortgagee in the enforcement of his right, and which affect its substance, are invalid as impairing the obligation, and cannot prevail."

This is supported by *Northern Pac. Ry. Co. v. State of Minnesota*, 208 U. S. 583; *VonHoffman v. City of Quincy*, 4 Wall. (U. S.) 535; *Bronson v. Kinzie*, 1 How. (U. S.) 311; *Brine v. Hartford Fire Ins. Co.*, 96 U. S. 627; *Barnitz v. Beverly*, 163 U. S. 118. In our State it has been repeatedly held that no statute, however positive, is to be construed as designed to interfere with existing contracts and then not unless the intention to do so is expressly declared in the act. The court said in *People v. McClellan*, 137 Ill. 352:

"Courts will apply new statutes only to future cases, unless there is something in the very nature of the case, or in the language of the new provision, which shows that they were intended to have a retroactive operation. And although the words of the statute are broad enough, in their literal extent, to comprehend existing cases, they must yet be construed as applicable only to cases that may thereafter arise, unless a contrary intention is unequivocally expressed therein."

The same thing is repeated in *Dobbins v. First Nat. Bank of Peoria*, 112 Ill. 553; *Means v. Harrison*, 114 Ill. 248; *Anderson v. Baker*, 175 Ill. App. 254; *Conway v. Cable*, 37 Ill. 82. We therefore hold that the statute of the bonds in question as Class "A" securities was not affected or changed by the subsequent amendment of June 11, 1921.

Upon the trial evidence of sales of other bonds made at other times was admitted over objection. Evidence of other transactions is held to be competent in *People v. Love*, 310 Ill. 558, for the purpose of showing that the particular transaction charged is not an isolated sale and therefore exempt under paragraph 1 of section 5 of the act, Cahill's St. ch. 32, ¶ 258. Such evi-

dence, however, should be wisely controlled and should be admitted only for the purpose indicated; otherwise, there would be a tendency to divert a court or jury from the particular instance of violation of the statute charged against a defendant.

We have not commented upon the provision of the amendment of June 11, 1921, touching the situation where the mortgage liens do not exceed the fair market cash value of the real estate and buildings, for the reason that it is uncontroverted that at the time of the alleged illegal sale the value of the securities was in excess of the liens.

For the reasons indicated the judgment must be reversed and, as under the law and the undisputed facts there can be no conviction of the offense charged, the cause will not be remanded.

*Reversed without remanding.*

O'CONNOR, P. J., and MATCHETT, J., concur.